SYLVAN LEVY, Respondent, v. LOUIS LEAVITT, Appellant.

(Argued October 23, 1931; decided November 17, 1931.)

*Herman Shulman, David L. Podell, Jacob J. Podell* and *J. Martin Seiler* for appellant. Since the services rendered by the defendant were extraordinary, unusual and outside of the scope and course of the partnership business, he should be permitted to recover reasonable compensation therefor. (*McGibbon* v. *Tarbox,* 205 N. Y. 271; *Maynard* v. *Richards,* 166 Ill. 466; *Matter of Zell,* 136 Penn. St. 329; *Royster* v. *Johnson,* 73 N. C. 474; *Bradford* v. *Kimberly,* 3 Johns. Ch. 431; *Mondamin Bank* v. *Reynolds,* 165 Iowa, 711; *Hoag* v. *Alderman,* 184 Mass. 217; *Hooker* v. *Williamson,* 60 Tex. 524; *Emerson* v. *Durand,* 64 Wis. 111; *Rains* v. *Weiler,* 166 Pac. Rep. 235; *Clement* v. *Ditterlin's Administrators,* 11 Ky. L. R. 294; *Stidger* v. *Reynolds,* 10 Ohio, 351; *Rhein* v. *Peeso,* 194 App. Div. 274; *Thayer* v. *Badger,* 171 Mass. 279; *Baker* v. *McGrane,* 224 N. W. Rep. 737; *Forbes* v. *Butler,* 66 Utah, 373; *Wisner* v. *Field,* 11 No. Dak. 257.) The defendant is entitled to charge the

venture with interest on moneys loaned by him to it or on loans obtained by him for the benefit of said venture. *Century Bank* v. *Breitbart*, 89 Misc. Rep. 308; *Steward* v. *Hansen*, 62 Utah, 281; *Shever-Gillett Co.* v. *Long*, 318 Ill. 432; *Rodgers* v. *Clement*, 162 N. Y. 422; *Beach* v. *Collis*, 85 N. Y. 511; *Kraus* v. *Kraus*, 250 N. Y. 63; *Baker* v. *Mayo*, 129 Mass. 517; *Kaufman* v. *Catzen*, 90 W. Va. 719; *Lloyd* v. *Carrier*, 2 Lans. 364; *Morris* v. *Allen*, 14 N. J. Eq. 44; *Berry* v. *Folks*, 60 Miss. 576.)

*Jacob W. Kahn* for respondent. The defendant is not entitled to compensation, either for his services in managing the partnership affairs prior to dissolution, or in winding them up after dissolution, in the absence of agreement or statutory provision therefor, and this is so whether the services rendered are ordinary or unusual. (*McDermott* v. *Rossney Contracting Corp.*, 131 Misc. Rep. 759; 225 App. Div. 784; *Transit Commission* v. *L. I. R. R. Co.*, 253 N. Y. 345; *People* v. *Hagan*, 138 Misc. Rep. 771; *Graf* v. *Hope Building Corp.*, 254 N. Y. 1; *Sun P. & P. Assn.* v. *Remington P. & P. Co.*, 235 N. Y. 338; *Anthony* v. *Syracuse University*, 224 App. Div. 487; *City of Buffalo* v. *International Ry. Co.*, 135 Misc. Rep. 497; *Whiteside* v. *North American Acc. Ins. Co.*, 200 N. Y. 320; *Rhein* v. *Peeso*, 194 App. Div. 274; *Evans* v. *Warner*, 20 App. Div. 230.) Under the agreement plaintiff was not required to contribute any additional money above his capital investment, and the referee properly disallowed defendant interest on the moneys which he supplied to finance the venture. (*Rodgers* v. *Clement*, 162 N. Y. 422; *Grant* v. *Smith*, 70 App. Div. 301; *Clausen* v. *Puvogel*, 114 App. Div. 455.)

LEHMAN, J. In June, 1919, the plaintiff agreed to assume a twenty per cent interest in the purchase for resale of a large quantity of bacon which the United States government offered for sale. The plaintiff paid the defendant the sum of $50,000 and received a letter from

the defendant stating: " This is to acknowledge receipt of your check for $50,000 as part payment on the purchase of approximately 2,500,000 pounds of bacon. It is understood that you are to receive twenty per cent. of the net profits or stand twenty per cent. of the net loss should there be any loss." No formal contract was made. Indeed, the record does not show that the parties agreed as to how the purchase should be financed or how the joint venture should be conducted, but the evidence shows, and the trial court has, in effect, found, that the parties agreed that the joint venture should be managed by the defendant, and that the plaintiff was not obligated to perform any services or to make any further capital contributions.

The parties, undoubtedly, anticipated large profits to be derived from a quick resale of the bacon. Their anticipations were defeated through obstacles unexpectedly interposed by the United States government. Claiming that the defendant was violating the "Act to Provide for the National Security and Defense," commonly known as the " Lever Act," it procured an indictment against the defendant and libeled the bacon purchased by the joint venture. The defendant could not deliver to purchasers the bacon which had been taken from his possession. By the time that the defendant succeeded in obtaining a judicial determination in his favor, the bacon had so deteriorated that it was no longer readily salable.

The defendant then made extraordinary efforts to sell the bacon. He traveled through Europe in the hope that there he might find a purchaser for bacon which was not merchantable here. His efforts were fruitless. The bacon had then become unfit for human consumption and was seized and destroyed by the public authorities.

Through the destruction of the bacon the joint venture had irretrievably lost the entire purchase price of the bacon, amounting to about $700,000, augmented by expenses incurred in the conduct of the venture and

offset only by payments for the small proportion of the bacon which had already been sold and delivered. Indemnification for such loss might still be obtained from the United States government if its executive, legislative and judicial branches could all be convinced that the loss was occasioned by unfounded charges of the government, and that a moral duty rested on the government to make good such loss. The defendant succeeded in convincing the President and General Dawes, the Director of the Budget, that a favorable report should be made to Congress; he succeeded in convincing Congress that a statute should be enacted permitting the submission of the claim for indemnification to the Court of Claims, and his attorneys succeeded in convincing the court that the claim should be allowed with few deductions. For the plaintiff's share of the moneys received or expended by the defendant in the joint venture, the defendant must now account.

Upon the accounting, the defendant has been denied the right to charge as an expense of the joint venture or partnership the reasonable value of any services rendered by the defendant, and interest on any moneys which he loaned or furnished to the venture in the conduct of its business. The rights and obligations of the partners as between themselves arise from and are fixed by their agreement. (*Martin* v. *Peyton*, 246 N. Y. 213; *Corr* v. *Hoffman*, 256 N. Y. 254.) Here the agreement was oral and informal. There is nothing to show that the parties considered or discussed whether the defendant should be entitled to compensation for his services or to any interest for moneys he might furnish. The question then is whether from the relations of the parties and the circumstances of the transaction, an implication of a promise of compensation for services rendered or of interest upon moneys paid arises.

We consider first whether a charge may be made for services rendered. In *Bradford* v. *Kimberley* (3 Johns.

Ch. 431) Chancellor KENT stated the rule: " In the case of joint partners, the general rule is, that one is not entitled to charge against another, a compensation for his more valuable or unequal services bestowed on the common concern, without a special agreement; for it is deemed a case of voluntary management." The rule has been often stated in different form, but no authority, judicial or extra-judicial, has seriously questioned its substance. In the ordinary course of business affairs, services are usually rendered with expectation of reward, and silent acceptance of such services may justify, or at times, even dictate, the inference of an implied promise to pay the reasonable value of such services. The basis for such inference is lacking when circumstances point to the conclusion that the services were rendered voluntarily and without reasonable expectation of payment. (1 Williston on Contracts, §§ 90–91, and cases there cited.) In the business of a partnership the services of a partner are rendered for the common benefit in the performance of an obligation created by the partnership agreement, and the resultant benefit is divided *pro rata* as provided in the partnership contract. Those profits constitute, in the absence of other agreement, the stipulated reward for services to be rendered, and there is no right to other compensation based on the reasonable value of the services actually rendered. Inequality in the value of services rendered, even the fact that the services were extraordinary and that, at the time the contract was made, the parties did not contemplate that such services would be required in the course of the partnership business, would not alone justify the award of compensation outside the share of profits accruing to the partner rendering the services. True, such circumstances, though insufficient alone to give rise to an implied promise to pay for the services rendered, may give significance and color to other evidence, tending to establish that the parties intended that special payment should be made for special

services and expressed that intention — though perhaps somewhat equivocally, either in words or deeds.

So in spite of the rule that in the absence of a special contract a partner is not entitled to any remuneration for services performed in the partnership business, the courts have at times found such a special contract where the services were rendered under extraordinary circumstances. Perhaps the courts in some jurisdictions require less evidence of a special contract where the services were rendered after dissolution, and, indeed, at times awarded, without finding of special contract, compensation for services rendered by a surviving partner in the dissolution of the partnership. (See *Consaul* v. *Cummings*, 222 U. S. 262.) Such cases create at most an exception to the general rule. Under the general rule which is applicable here the defendant is entitled to special compensation for services only if the parties did in fact agree that such compensation should be allowed, and not otherwise.

Since the courts below have determined the question of fact otherwise, the question before us is not whether the circumstances are sufficient to justify an inference of fact that such a contract was made, but rather whether such an inference must be drawn as matter of law. Analysis of decisions in other jurisdictions made upon their peculiar facts would serve little purpose. None present a close analogy, and even where the analogy is remote and the circumstances point much more clearly to a special contract, the question was presented and passed upon as a question of fact and not of law. The only case in this State, cited by the defendant, where the court allowed compensation to a partner for services performed other than extraordinary services rendered by a surviving partner, is *Bradford* v. *Kimberley* (*supra*). There compensation was allowed for services performed by commission merchants in the sale of a cargo of which they were part owners, but it was not questioned that the services were performed under an employment or

special agency conferred by all the owners upon the merchants, "altogether distinct from their ordinary powers as part owners." Thus the question presented was only whether in an unquestioned contract of special agency between copartners there is an implied obligation to pay for the services rendered by the special agent. No such question is here.

Though the evidence shows that unexpected obstacles called forth extraordinary exertions by the defendant in attempting to sell the bacon, nevertheless his services at that time were performed in compliance with the obligation he had assumed, when the partnership was formed, to devote his efforts to the resale of the bacon. There are no circumstances which would support an inference that the services were performed at the special request of his copartners or under a special agency or employment, or that the partners agreed to pay any compensation for such services. Certainly none which would require such an inference as a matter of law.

Perhaps the services performed after the bacon was destroyed and the partnership purpose of resale thwarted might be said to be outside the scope of the original partnership. Even so, their purpose was to diminish the loss already suffered by the partnership and under the "ordinary powers as part owners" in the claim created by the partnership loss. We may assume that in such case the inference of an implied promise to pay for such services might be drawn from evidence too slight to permit an inference of promise to pay special compensation for services rendered in the course of the original scope of the partnership, yet here too the evidence is clearly insufficient to establish such an implied contract as a matter of law. It does not appear that the plaintiff solicited such services or even that he could have prevented the defendant from performing them if he had objected. They were either wholly voluntary or performed as an obligation impliedly assumed when the copart-

nership was formed. It follows that the finding, that no obligation to pay was created, is supported by the evidence.

The defendant's right to charge against the plaintiff's share in the partnership funds, interest on moneys furnished by the defendant, like his right to charge compensation for his services, depends upon the contract made between the parties. True, the Partnership Law (Cons. Laws, ch. 39), section 40, has provided statutory rules for determining the rights and duties of partners " subject to any agreement between them." These rules provide (subd. 3): "A partner, who in aid of the partnership makes any payment or advance beyond the amount of capital which he agreed to contribute, shall be paid interest from the date of the payment or advance; " and (subd. 6): " No partner is entitled to remuneration for acting in the partnership business, except that a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs." Such rules, by the terms of the statute, are not intended to supersede or override an agreement, whether expressed in words or implied in fact. Like an analogous section embodied in the Partnership Act of Great Britain, " this section declares the working rules implied by law in every partnership, except so far as excluded or varied by the consent of the parties in the particular case." (Pollock, Digest of the Law of Partnership [12th ed.], § 24.) Under these " working rules," as at common law, where the express contract of partnership fails to provide for payment of special compensation for services rendered, the burden of proving that the parties intended such payment rests upon the person claiming such compensation. Where the express contract fails to provide for payment of interest on moneys furnished by a partner beyond the amount which he agreed to contribute, the burden of proving that the parties intended that no such interest should be paid rests upon the other partners. To that extent only, the question of the right to interest bears a different aspect.

The distinction is not created by the statute, but was recognized by this court before the statute was enacted. (*Rodgers* v. *Clement,* 162 N. Y. 422.) It rests upon an inherent difference between the obligation of a partner to render services in the partnership business and the obligation to provide capital. The first obligation arises from the partnership relation and is limited only by agreement, express or implied, of the parties. The second obligation exists only when it is created and defined by agreement, express or implied; yet to the extent that the partnership agreement fails to impose an obligation upon the partners to furnish capital requisite for the conduct of the business, the parties to the contract must intend that money will be borrowed to carry on the business and that interest will be paid on money borrowed. Therefore, where a partner pays money to the partnership beyond his partnership obligation, it is a reasonable inference that the parties intended that such payment should be a loan and should bear interest.

It is true that at times where the contract is silent as to the obligation of partners to contribute capital, the course of conduct of the parties may show that they intended that no interest should be paid. We do not now decide how far, if at all, the statutory rule affects such cases. Here the court has found that the plaintiff contributed $50,000 to the joint venture, of which $10,000 was returned at plaintiff's request, and that " there was no understanding that the plaintiff might be called upon to contribute additional funds." There is no finding and no evidence that the defendant assumed any obligation to contribute to the partnership capital the remainder of the moneys necessary to pay the purchase price of the bacon, and other expenses. True, the trial court has found that the " entire management of the venture was left to the defendant. How he was to finance the balance was never discussed;" but even though the defendant as managing partner may have anticipated that the venture

would be financed without further contribution of capital from the plaintiff, it does not follow that he impliedly agreed to assume an obligation to contribute to the capital fund the moneys required to finance the venture. The trial judge has not so found, and the evidence does not support such an inference. Concededly the plaintiff's contribution of $40,000 " in part payment on the purchase " of the bacon was much less than his proportionate share of the purchase price. He may have assumed that the defendant or such persons as might join in the venture would make a proportionate contribution. He had no ground for assuming that the defendant or other copartners would contribute without cost to him the entire remainder of the purchase price. The only reasonable inference is that the defendant, in behalf of the joint venture, might borrow the moneys necessary to finance the venture, and that the plaintiff's twenty per cent interest in the venture could be charged with interest on a proportionate share after deducting the plaintiff's contribution. Indeed, the plaintiff does not seriously contend otherwise, but insists that since the defendant borrowed the money in his own behalf and then furnished the borrowed money to the venture, it must be regarded as a capital contribution. There is no basis for that contention, since the defendant was under no obligation to contribute that money to the capital, but was at liberty to finance the venture by loans. Under the express terms of the statute, if not at common law, the defendant is entitled to interest upon the amount so contributed, and the plaintiff's share in the venture must be charged with interest on the balance of his proportionate share of the moneys furnished after deducting the plaintiff's capital contribution.

The judgment should be modified in accordance with this opinion and as modified affirmed, without costs.

CARDOZO, Ch. J., POUND, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment accordingly.