In the Matter of the Estate of RUTH A. DUNHAM, Deceased.

Surrogate's Court, Rensselaer County, December 29, 1966.

*George E. Dougherty, Jr.,* and *Joseph F. Daly* for Clyde Dunham, as executor. *John S. Davison* for Fred Dunham, Jr., and another, objectants. *James M. Strang,* special guardian for John B. Dunham.

A. FRANKLIN MAHONEY, S. In connection with the petition for judicial settlement of the accounts of Clyde Dunham as executor of the estate of his mother, Ruth A. Dunham, written objections on behalf of other children, one of whom is incompetent and appears herein by special guardian, were filed. The special guardian joins in the objections. Specifically, the objectants seek to surcharge the executor for crediting the accounts of his

mother (schedule " C " of account) with the balance of a note to the Troy Savings Bank in the amount of $6,733.96. The deceased and her son, the executor, were general partners in a milk distribution business and the objectants allege that the note balance is an obligation of the partnership. The background to the problem is as follows:

In 1954 decedent's husband died and she entered into a general partnership with her son Clyde. Articles of copartnership were executed on October 1, 1954 which, so far as germane herein, prohibited the execution of notes or evidences of indebtedness by a single partner; provided that profits were to be divided equally; and, further, that any additions to capital should be made equally by the partners. On August 14, 1961, deceased, in the presence of her partner-son, executed a promissory note to the Troy Savings Bank in the amount of $8,500 and secured the same by pledging her savings account in the same bank which had a principal balance of $10,000. The deceased's partner-son did not sign the note. The note was not signed by the deceased by or for or in behalf of the partnership. Thereafter, the entire proceeds of the note were deposited in the checking account of the partnership in another bank. All of the payments of interest and principal on the note, prior to decedent's death, were by partnership checks. All such checks were signed by the deceased's copartner, Clyde Dunham. None of these payments was charged against Ruth Dunham's capital account nor was her share of profits adjusted or reduced by such payments. Further, an examination of the partnership Federal income tax returns for the years 1961 through 1964 reveal claimed deductions of interest in each of said years sufficient in amount to cover the interest payments on the note to the Troy Savings Bank.

Clearly, from all of the above, the loan, as evidenced by the note and secured by the savings account passbook, was personal in nature and at the time of its execution was not binding on the partnership. At this point the deceased partner did not purport to act in any way contrary to the partnership agreement so as to bind the partnership. Accordingly, the provisions of the agreement prohibiting one partner from legally obligating the partnership by execution of a note of indebtedness is not applicable. This provision is not germane to the relationship of the partnership to third parties but to the partners, *inter se*. Partnership articles are rarely published. The provisions they contain are to regulate the conduct and rights of the partners as between themselves. The business world cannot know of such restrictive stipulations and, unless the same are made

known, have every right to trust to the general powers contained in all partnerships.

The issue then is not whether the deceased violated a provision of the partnership agreement but, rather, if the conduct of the partners subsequent to the loan created a partnership liability. As recited above, the proceeds of the note were deposited in the partnership general account; all payments of principal and interest on the note were by partnership check signed by the surviving partner (accounting executor herein); the partnership income tax returns show deductions of interest approximately equivalent to the interest paid in each year on the note; partnership records show equal distribution of profits between deceased and the executor herein, her son and copartner, subsequent to the date of the note; deceased's capital account in the partnership was never charged with any part of the obligation evidenced by the note.

The objectants argue that all this amounts to a direct ratification of the borrowing by the partnership. The accounting executor takes the position that the $8,500 was a '' contribution '' by the deceased to compensate the firm for the small amount of time she devoted to its business even though she shared equally in its profits. Both sides refer to subdivision 2 of section 20 of the Partnership Law as authority for their respective positions. I shall not discuss the persuasive arguments advanced for consideration of this statute because, in my view, section 20 of the Partnership Law is not relevant to the issue herein. We are not concerned with the liability of the partners or partnership *inter alia* but of the partners *inter se*. The savings bank did not make a partnership loan. It made a personal loan to the decedent secured by her personal assets. The issue is whether the partners acted within their agreement so as to transfer the liability from a partner to the firm and, further, whether by their action and conduct they created a debtor-creditor relationship between the deceased and the partnership? Nothing they did could change the contractual relationship between the bank and the deceased.

Can copartners, who have adopted articles of copartnership governing their conduct *inter se,* alter or change their responsibilities and duties toward and between each other and/or between the partnership and themselves as partners? In my view, they can and, in this instance, did. Further, in my view, they also acted within the provisions of their agreement.

We are not here dealing with the issue of one partner being an authorized or unauthorized agent of the other, nor are we dealing with the question of one partner ratifying the act of

another. The problem is not with the relation of partners to persons dealing with the firm (Partnership Law, art. 3) but with the relation of partners to one another (Partnership Law, art. 4).

The rights and obligations of partners as between themselves are fixed by their agreement. (*Martin* v. *Peyton,* 246 N. Y. 213; *Corr* v. *Hoffman,* 256 N. Y. 254.) Here the agreement was in writing and paragraph 3 of said agreement provides that the copartners were to have an equal interest in assets and " should it be found necessary to contribute additional capital for the purpose of said partnership business the partners *agree* to contribute in equal proportions ". In my view, they agreed to do exactly that. The deceased borrowed the money (not in violation of the agreement). Said money was deposited in the firm account and used for firm purposes. All payments on the loan, prior to death, were made by the business, thus reducing equally the share of each in net assets and, eventually, increasing the share of each in the acquired assets after the loan was paid. Indeed, even in the absence of written articles in this case it would be difficult to avoid the same conclusion. The conduct of the partners *inter se* with respect to the loan gives rise to an implied contractual relationship whereby the partnership assumed the obligation of payment of the note. (*Levy* v. *Leavitt,* 257 N. Y. 461.)

I arrive at this conclusion without giving any weight to the provisions of the will of the deceased wherein she bequeathed her interest in the business to the executor herein. The will was executed several years before the date of the note. Consequently, no intent relating to the note can be read into that instrument.

Schedule " D " of the account should be restated so as to delete therefrom the credit of $6,733.96 and the balance to be distributed should be adjusted accordingly.