Richard **FRIEDMAN** and Albert **Fager-berg, Plaintiffs-Appellees,**

v.

**GOLDEN ARROW FILMS, INC., Defendant-Appellant.**

**No. 200, Docket 34894.**

United States Court of Appeals, Second Circuit.

Argued Nov. 11, 1970.

Decided April 29, 1971.

Morris Ebenstein, New York City, (Offer & Chikofsky, Sidney Offer, and Morris Ebenstein, New York City, on the brief), for defendant-appellant.

Peter J. O'Connor, New York City (McMahon, Keeffe & Costikyan, Peter J. O'Connor, New York City, on the brief), for plaintiffs-appellees.

Before SMITH and FEINBERG, Circuit Judges, and LEVET, District Judge.*

LEVET, District Judge:

This is an appeal by defendant, Golden Arrow Films, Inc. ("Golden Arrow") from a judgment in the sum of $58,272.-71 rendered on April 27, 1970 in favor

of plaintiffs by Edmund L. Palmieri, District Judge, Southern District of New York, after a non-jury trial.

The action asserted the following claims: Plaintiffs, as holders of an option to purchase sixteen short-subject children's films, entered into a joint venture contract with the defendant dated August 26, 1966. Plaintiffs obligated themselves to transfer their property interest in seven of the sixteen films to the partnership; defendant agreed to produce, distribute and finance two feature length children's films from the group of short-subject films.

This agreement included among other things:

1. The formation of a partnership to be known as Fairy Tale Production Company;

2. The transfer by plaintiffs to said partnership of all right, title and interest in and to seven short-subject children's films;

3. The production of two feature-length motion pictures employing Edgar Bergen and his puppets;

4. The supervision of the production of such films and financing up to $50,-000 per film by defendant (Finding of Fact 7).

Jurisdiction is based upon diversity of citizenship under Title 28 U.S.C. § 1332.

The trial court held that plaintiffs performed each and every obligation required of them but held that defendant failed to perform its obligations in the following respects:

1. Defendant never was in a position to carry out its commitments (353);[1]

2. Defendant, pursuant to the agreement, obligated itself to pay a certain laboratory, George Humphries Ltd., $6,000 for so-called "interpositives" of the short-subject motion pictures for the purpose of converting their use to color production other than the original

[1]. Unless otherwise designated, numbers in parentheses refer to pages in the Appendix on Appeal.

"Orwo" color; defendant failed to pay and plaintiff Friedman paid (Finding of Fact 10);

3. Defendant failed to finance the enterprise (Finding of Fact 8).

On October 24, 1967, attorneys for plaintiffs wrote to Golden Arrow as follows:

"We have been instructed by our clients to advise you that they elect to rescind the contract dated August 26, 1966 between Richard Friedman and Albert Fagerberg, on the one hand, and Golden Arrow Films, Inc., on the other. Rescission of the contract is based on fraud of Golden Arrow Films, Inc.

"All transfers of money or other property by Mr. Friedman and Mr. Fagerberg to Golden Arrow Films, Inc. or to the partnership pursuant to the contract of August 26, 1966 are to be deemed to be null and of no effect and all such property shall be considered the property of Mr. Friedman and Mr. Fagerberg as if never conveyed.

"The foregoing is without prejudice to institution of legal action and recovery of full damages for the fraud perpetrated" (Deft.Ex. A; 332).

The district court held that there was no rescission since a "mutual termination" was not executed but that defendant had repudiated the contract and breached the same. On that basis the trial court concluded that plaintiffs had the right to refuse further performance on their part and a right to contract damages.

The Conclusions of Law entered by the trial court held that defendant was liable to plaintiffs on two causes of action: (1) For "wilful" violation of the contract, and (2) "for fraudulently inducing the plaintiffs to believe that it was able and willing to abide by such contract whereas it never had the capacity or intention to do so" (356).

Judge Palmieri decided that plaintiffs were entitled to damages as follows (357):

"(a) $3,960.17, as reimbursement for out-of-pocket disbursements incurred in connection with their contract.

"(b) $6,312.54, as reimbursement for obligations incurred [by defendant] and paid [by plaintiffs] to the British· film laboratories, George Humphries & Co., Ltd. and De Lane Lea Processes, Ltd.

"(c) $8,000.00, as compensation for the reasonable value of the time and effort devoted by plaintiff Friedman to the film project between June 1966 and March 21, 1967.

"(d) $40,000 for loss of prospective profits that would have been realized in the joint venture had it not been for the wrongdoing of the defendant."

The judge also noted that "(e) The sale of the non-commercial rights of the component films by plaintiffs for $35,-000 and the sale of Magic Bow to Mc-Graw-Hill for $5,000 are deemed to be substantial reimbursement to plaintiffs for cost of the component films. Accordingly the judgment will not include any amount to reimburse plaintiffs for the cost of the component films. The plaintiffs have sufficiently established the cost of these films to be $40,000." The sales referred to were conducted after the alleged wrongful conduct of defendant; it was pursued for purposes of salvaging the thwarted venture and to mitigate damages.

## I. Fraud

We have concluded as follows: That any finding or conclusion that Golden Arrow was guilty of fraud is unsupported by any finding of fact or by sufficient proof in this record and, hence, requires reversal.

The findings of the trial court (350–356) are not sufficient to clearly establish fraud as required by United States v. Kiefer, 97 U.S.App.D.C. 101, 228 F.2d 448, 449, cert. denied 350 U.S. 933, 76 S.Ct. 305, 100 L.Ed. 815 (1956).

We hold, in substance, that defendant's representation to Friedman and

Fagerberg that the latter partners "need not fear spending too much" in the production of the animated films is not sufficient to justify a judgment based upon fraud although defendant was not in a position to provide unlimited finances when it made that statement.

There was no false representation of any material fact, made with knowledge of its falsity and with intent to deceive plaintiffs. See Jo Ann Homes at Bellmore, Inc. v. Dworetz, 25 N.Y.2d 112, 302 N.Y.S.2d 799, 803, 250 N.E.2d 214 (1969).

Accordingly, the judgment of the court below based upon fraud is reversed and this claim is dismissed.

## II. Breach of Contract

■ The original complaint in this action alleged only a cause of action predicated upon fraud (3a).

The answer of Golden Arrow alleged as a "First Affirmative Defense and Counterclaim" that plaintiffs had elected to rescind the partnership contract and that this so-called "rescission" constituted the destruction of valuable partnership and property rights. Accordingly, defendant requested a declaratory judgment which would delineate its interest and also serve to obtain the complete disposition of the entire controversy.

A "Second Affirmative Defense and Counterclaim" sought to obtain damages for plaintiffs' breach of contract, which consisted of various alleged infirmities in the short-subject films transferred to the partnership and for the alleged unlawful rescission and dissolution of the partnership and seizure of the partnership assets.

At the conclusion of the trial, plaintiffs were permitted to conform the pleadings to the purported proof through the inclusion of a cause of action based upon breach of contract. We do not disturb the allowance of said amendment. In addition, the court below dismissed defendant's counterclaims (270).

We have concluded that the proof provides ample evidence to support the finding of the trial court that the defendant breached its obligation to finance the production of two feature length films (32–36, 81–82). Nevertheless, we remand to the trial court for purposes of permitting further findings and proof on the issues of plaintiffs' substantial performance of their obligations and allowable damages as outlined below.

Initially, our discussion is directed to the issue of whether plaintiffs could properly sue in contract or were precluded by an alleged "irrevocable election of remedies" from pursuing a suit based upon breach of the agreement. Defendant's first affirmative defense asserts this latter bar.

### A. *Election of Remedies*

■ Apprised that defendant had breached its contract and believing that it had been victimized by fraud, plaintiffs, through their attorneys, sent the so-called "letter of rescission," dated October 24, 1967, referred to above.

On appeal, defendant vigorously contends that this notice constitutes a rescission; specifically, the argument states that plaintiffs dissolved the partnership, cancelled their transfer of legal title to the seven short-subject films and restored title to themselves (Brief of Defendant-Appellant, 6–7).

To the contrary, plaintiffs cite New York CPLR 3002(e), which they contend abnegates the ancient doctrine of "election of remedies" by permitting rescission, restitution of benefits conferred and damages, all in the same action.

A careful examination of this statute discloses, however, that it is inapplicable in the context present here. New York CPLR 3002(e) is pertinent in circumstances where a plaintiff, victimized by fraud, seeks to rescind its agreement and yet affirm it for the purposes of obtaining damages resulting from the fraud. Due to the conclusion of this court that the present record is insuffi-

cient to establish a cause of action based upon fraud, the application of that statute becomes academic. Consequently, whatever remedies were available to plaintiffs must be found under the principles of contract law. The issue becomes, then, did plaintiffs "rescind" the partnership contract in such a manner as to preclude a subsequent action for contract damages? Although a form of "rescission" occurred, we believe that it should not be characterized as an "irrevocable" election of remedies. Therefore, we affirm the result reached by the trial court in its dismissal of defendant's affirmative defense based upon the doctrine of election of remedies.

The trial court properly observed that the technical term "rescission" describes a mutual termination of a bilateral contract. When used in the legal vernacular, the term designates the remedy afforded to a party aggrieved by a substantial breach of contract, i. e., the right not to perform and yet to be compensated in some form.

"Rescission," as used in the present context does not require mutual assent. As Professor Corbin states, 5 -Corbin, § 1105, pp. 567–568:

> "It certainly requires no expression by the wrongdoer other than his repudiation or his failure to perform; and further, no action or expression on the part of the injured party is necessary, other than his failure to go ahead with his performance or his bringing an action for one of the remedies that is given to him by law."

In the instant case, although an honest *belief* that a fraud was perpetrated would be an insufficient ground for plaintiffs to refuse further performance, 17A C.J.S. Contracts § 418(1), p. 511, the fact that defendant substantially breached its obligation warranted plaintiffs' non-performance.

At this juncture in the analysis, the critical question arises: Could plaintiffs not only refuse to perform but institute a suit seeking contract damages?

The defendant argues that plaintiffs "dissolved the partnership," "cancelled their legal title to the seven East German short subjects," and "restored title to themselves" (Brief of Defendant-Appellant, 6–7).

The trial court, however, concluded that "plaintiffs' notice did not relieve the defendant of responsibility for its non-performance" (Opinion of Judge Palmieri, pp. 8–9). We affirm that determination for the following reasons:

First, the language of the letter of October 24, 1967 must be viewed in the circumstance in which it was written and the intention of its authors. This correspondence stated unequivocally that "rescission of the contract is based on fraud of Golden Arrow Films, Inc." Plaintiffs next stated that all transfers of property were null and void. They concluded by announcing that "the foregoing is without prejudice to institution of legal action and recovery of full damages for the fraud perpetrated" (Ex. A; 332).

This correspondence cannot be fairly interpreted as a relinquishment, that is, a disaffirmance of the entire contractual arrangement. Not only is it explicit in conserving whatever right to damages was available, it is specifically predicated upon the fact that defendant committed fraud.

Plaintiffs did not have to rescind the entire agreement in order to obtain the rectification of their grievance. To that date, they obviously believed that they had substantially performed their obligations and were fully aware that defendant had breached the agreement to provide capital. A "rescission" would have been unnecessary and counterproductive.

Defendant does not insist that plaintiffs rescinded their agreement solely upon the basis of the letter; it additionally notes that plaintiffs "acted upon the rescission" by "seizing" the interpositive films and selling them to N.E.T. and McGraw–Hill.

This court is unable to characterize these acts as an irrevocable election to rescind the entire agreement. What apparently occurred was that plaintiffs, believing that they were victimized by fraud, composed and sent the letter of October 24, 1967 and pursued their grievance pursuant to Section 70(a) of the New York Partnership Law, McKinney's Consol Laws, c. 39. This statute affords a defrauded partner the right to retain partnership property after satisfying other partnership liabilities to third persons. In reliance upon Section 70(a), plaintiffs "satisfied the partnership liabilities to third persons," i. e., they reimbursed George Humphries & Co., Ltd.

While such a course of action might be incorrect in view of the fact that fraud has not been established, such conduct is not, necessarily, indicative of rescission and restitution. Moreover, it is difficult to characterize plaintiffs' "seizure" of the interpositive films as an act of "restitution" *in specie* since the nature of these films had markedly changed. Specifically, plaintiffs transferred seven short-subject East German films to the partnership; they salvaged the defunct venture by selling films whose form had been converted into interpositives and whose content had been materially altered.

The controlling remedies for breach of a partnership contract are outlined in Section 69(1) (2) of the New York Partnership Law. Subsection 2 states that where dissolution is caused in contravention of the partnership agreement, the partner who has not caused the dissolution is entitled to both (1) damages for breach of contract; and (2) application of the partnership property to discharge the partnership liabilities; the surplus remaining is to be applied to pay the amount owing to the respective partners for their investment.

Paragraph (c) of subsection 2 of Section 69 permits the partner-wrongdoer to share in the net surplus after deduction of damages for his breach of contract. In the present case, it does not yet appear that there was any residue which defendant could claim.

The only partnership liability appears to have been the George Humphries debt which was satisfied by plaintiffs; this payment extinguished whatever obligation defendant had incurred under the partnership agreement to third persons. There were no other "respective partners" among whom the surplus had to be divided.

■ It should be noted that a partner, having a cause of action for dissolution, by reason of the co-partner's breach of agreement, could petition a court for a decree of dissolution and accounting. New York Partnership Law § 63(1) (d). Nevertheless, if he proceeds to exercise "self-help" in such a situation and excludes the erring partner and dissolves by notice, he is not liable in damages for his justifiable termination of the partnership. Crane, Partnership, p. 414; Schnitzer v. Josephthal, 122 Misc. 15, 202 N.Y.S. 77 (1923), aff'd 208 App.Div. 769, 202 N.Y.S. 952 (1924).

■ It is appropriate to comment at this point on Judge Palmieri's decision to dismiss defendant's second counterclaim, which sought *damages* for the alleged breach of the partnership agreement. The trial court correctly concluded that since defendant completely failed to perform its obligation, it could not maintain an action for breach of the partnership agreement. Whether defendant is entitled nonetheless to an accounting is a question we shall hereinafter consider.

B. *Insufficiency in the Record Regarding Plaintiffs' Substantial Performance*

■ Although defendant clearly breached the contract we are compelled to remand for the purpose of allowing further findings—and evidence, if the district court so decides—on the issue whether plaintiffs "performed each and every obligation required of them to be performed" (Finding of Fact 8; Con-

clusion of Law 3). Our concern is directed at certain warranties of title made by plaintiffs which were not fully complied with.

In the partnership contract, plaintiffs made the following representations:

"Second, Fagerberg and Friedman represent and warrant that they own full and complete rights, title and interest in and to a number of children's fairy tale short subjects (35 mm. color negative), and that such completed pictures are free and clear of all liens or other claims of every kind" (Ex. 2).

The plaintiffs purchased the seven short films from VEB DEFA Aussen Handel, Berlin, an East German Producer ("DEFA"). Paragraph 10 of that agreement between plaintiffs and DEFA provided that the seller (DEFA) retained the right to declare the sales contract "rescinded" if Friedman and Fagerberg failed to meet various obligations, the one pertinent in this context being the obligation to pay for the materials purchased.

It is undisputed that at the time of trial, plaintiffs had failed to completely satisfy their obligation to DEFA although the time for payment had elapsed; indeed, at that time $20,000 of the $40,000 purchase price was still unsatisfied. The court below made no mention of this factor; rather, it concluded that plaintiffs were free from any impropriety in their obligations to defendant.

In order to justify a judgment in favor of plaintiffs, there must be a finding of fact as to whether there were any defects in their performance and that if there were, performance was substantial in spite of them; there must also be evidence sufficient to sustain such a finding. Villhauer v. Gross, 138 App.Div. 10, 122 N.Y.S. 520 (1910).

On appeal, plaintiffs seek to diminish the effect of this lien by noting that there was evidence to demonstrate that DEFA notified Friedman and Fagerberg that a "moratorium" would be permitted on the $20,000 debt. Friedman testified that DEFA twice extended the time for payment; nevertheless, the terms of this agreement were indefinite. The fact remains that DEFA did not cancel the debt but, rather, retained the right to rescind its agreement and reacquire the films.

Judge Palmieri's finding that plaintiffs performed every obligation required of them fails to reflect the above circumstance. Upon remand, the trial court is directed to ascertain whether plaintiffs substantially performed their duties despite this alleged defect in title. If the district court in its discretion wishes to allow further evidence on this limited issue, it is, of course, free to do so.

### C. Contract Damages

There are certain items of damages, awarded by the court below, with which this court does not agree. Accordingly, we remand to the trial court for purposes of receiving any additional evidence on damages and making appropriate findings of fact consistent with the following principles.

The court below included among the recoverable items of damage $8,000 representing the reasonable value of services provided by plaintiffs to facilitate the venture.

It is a well-recognized rule of partnership law that, except by agreement, a partner has no right to any compensation for services rendered for the firm apart from his share of the profits arising therefrom. New York Partnership Law § 40, subdivision 6.

A concomitant rule provides that a partner is entitled to special compensation if the parties did, in fact, agree that such compensation should be allowed. Levy v. Leavitt, 257 N.Y. 461, 178 N.E. 758 (1931).

Where the contract of partnership fails to provide for payment of special compensation, the burden of proving that the parties intended such payment rests upon the person claiming it. Levy v. Leavitt, *supra* at 467, 178 N.E. 758.

 The opinion of the trial court is silent in this respect; accordingly, upon remand, an appropriate finding or findings must be made before remuneration for personal services can be awarded as damages.

A second item of damage which is contested concerns the "loss of prospective profit that would have been realized in the joint venture had it not been for the wrongdoing of the defendant" (Conclusion 6(d); 357). Judge Palmieri awarded plaintiffs $40,000 for this purported loss.

The appellant assails this award upon the grounds that expected profit was too remote and speculative to form the basis of an award of damages. Appellant relies principally upon Broadway Photoplay Co. v. World Film Corp., 225 N.Y. 104, 121 N.E. 756 (1919), opinion by Cardozo, J., reversing 175 App.Div. 980, 162 N.Y.S. 1112 (1916), wherein the Court of Appeals held that recovery for lost profit in advance of actual earnings of an "unknown" motion picture was not permissible.

Plaintiffs seek to distinguish the circumstances present here by arguing, as the trial court found (355), that children's films, especially those based upon classic fairy tales, have a relatively stable market and are not vulnerable to changes in customs, dress, and other variables which might affect the success of most feature-length film productions.

 The controlling principle is stated in Dunkel v. McDonald, 272 App. Div. 267, 70 N.Y.S.2d 653, aff'd 298 N. Y. 586, 81 N.E.2d 323 (1948), cited by both parties, wherein the court noted that damages which are difficult to measure may be nonetheless recoverable whereas damages that are purely speculative are not. Thus, once a determination has been made that profits would have been realized, the difficulty in precise measurement will not prevent an award of damages.

 Provided that this type of cinema, children's fairy tales, constitutes a definable market, a number of unre-solved contingencies remain which would have determined the ultimate success of the venture. These variables were not defined with the degree of certainty to permit this court to conclude that a profit was realizable. Among these critical elements were (1) whether the films were usable on television " * * * if they could be broken down into half hour shows" (203); (2) whether they were "quality pictures" (222); and (3) whether the color and national origin would impede their acceptance among the intended audience. It appears from the trial record that there is a serious doubt as to whether there is presently, or will be in the immediate future, a definable market for children's animated films.

We are mindful of Judge Palmieri's comment that he had "reservations" about the conclusions of all five experts. (Finding of Fact 18, 355–356.) Hence, the award of loss for expected profits is not presently sustainable.

### III. Counterclaim for an Accounting

Golden Arrow, through its first counterclaim (Answer, ¶¶ 3–7; 6(a)) and a motion (263–264) sought a declaration that it was entitled to a partnership accounting. In this manner, the appellant sought to receive credit for its alleged past contributions to the partnership. Furthermore, Golden Arrow contended that since it was not liable for fraud or breach of contract, Friedman and Fagerberg were liable for the wrongful dissolution of the partnership.

 Both litigants appear to agree with the general principle of partnership law that partners cannot sue each other at law for a breach of a partnership agreement or with reference to partnership affairs before there has been a final accounting of the partnership assets. See, for example, Arnold v. Arnold, 90 N.Y. 580, 23 Hun 293 (1882); 43 N.Y. Jur., Partnership, § 110, p. 120.

The trial court also recognized this principle of law but refused to apply it to the facts; this conclusion was predicated upon the distinction drawn in

Crownshield Trading Corp. v. Earle, 200 App.Div. 10, 192 N.Y.S. 304 (1922). The court therein held that an action at law was maintainable without a prior accounting due to the fact that only an agreement to form a partnership had been consummated. Here, Judge Palmieri similarly concluded that there was "at most an agreement to form a joint venture." (Opinion of Judge Palmieri, p. 14.)

We believe that the application of the *Crownshield* case, *supra*, is not warranted here. The evidence indicates that Friedman and Fagerberg and Golden Arrow intended to consummate a binding partnership agreement upon the execution of the memorandum of August 26, 1966. Specifically, paragraph First of that document states, in pertinent part, that the parties "hereby form a partnership to be known as Fairy Tale Productions Company * * *" (Ex. 2; 276).

This statement appears to be unequivocal; the manifest intention of the parties was to be obligated immediately upon execution of that document. Goldberg v. Goldberg, 276 App.Div. 1084, 95 N.Y.S.2d 777, reargument denied 277 App.Div. 782, 97 N.Y.S.2d 398 (1950). Had Golden Arrow done nothing to implement the contract, the partnership would nonetheless have existed as a legal entity.

The fact that these parties engaged in a going partnership necessitates an accounting. Rights and duties which are a part of a partner's relations to the partnership are not to be litigated until dissolution and winding up of all affairs of the partnership.

As one writer has stated:

" * * * [F]or the breach of the undertaking of a partner to pay in to the partnership his agreed capital contribution, or to perform any other duty to the partnership, there is no remedy in the other partner, except in the course of partnership accounting [citations omitted]." (Crane, Partnership, p. 375.)

Since Golden Arrow breached its obligation, it may not share in whatever profit the partnership would have derived if the venture had succeeded, assuming that a profit is demonstrable. Nevertheless, defendant is entitled to attempt to prove what contributions it has made and obtain an equitable adjustment between its copartner, subject to damages for the breach of contract. Schnitzer v. Josephthal, *supra* 122 Misc. at 16, 202 N.Y.S. 77.

We summarize our determination as follows:

1. The cause of action based upon defendant's alleged fraud is not sufficiently supported by the record and therefore the judgment is reversed and this cause of action should be dismissed.

2. With respect to the cause of action based upon breach of contract, we hold that plaintiffs did not irrevocably elect to rescind the partnership agreement; thus, they are not precluded from recovering upon principles of contract law.

3. Plaintiffs are entitled to recover damages for defendant's breach of contract subject to adequate evidence and a finding that plaintiffs substantially performed their obligations. Reduction, if any, for immaterial breaches by plaintiffs must be reflected in the ultimate award.

4. With respect to the amount of damages recoverable by plaintiffs, the trial court is directed to award damages pursuant to Section 69(1), (2) (c) of the New York Partnership Law. Damages for the time and effort expended by plaintiffs are dependent upon evidence and a finding that defendant agreed to compensate plaintiffs for their services. Recovery for loss of expected profit is dependent upon evidence and a finding that the partnership venture would have been financially successful as heretofore delineated.

5. Lastly, the trial court is instructed to direct and determine a partnership accounting; although defendant is entitled to be credited for past contributions

made to the partnership, it may not share in any expected profit, assuming that proof of the likelihood of such profit is forthcoming.

### IV. Conclusion

1. The judgment of the court below awarding damages for fraud is reversed; judgment for defendant dismissing this claim should be entered.

2. Plaintiffs' claim regarding breach of the partnership contract is remanded for further proof and findings consistent with the statements above mentioned.

3. The judgment dismissing defendant's counterclaim requesting a partnership accounting is reversed and the trial court is directed to conduct such an accounting.

Godbold, Circuit Judge, concurred in part and dissented in part and filed opinion.