Rook v. Storch                          CV-95-436-M   06/05/96

UNITED STATES DISTRICT COURT FOR THE
                          DISTRICT OF NEW HAMPSHIRE


Robert G. Rook,
      Plaintiff,

      v.                                    Civil No. 95-436-M

Storch Engineers, Herbert Storch,
and Laurence Storch,
      Defendants.


                            O R D E R


      The plaintiff, Robert G. Rook, brings this action alleging
breach of contract and breach of fiduciary duty, and seeks an
accounting from defendants Storch Engineers, Herbert Storch
(former Managing Partner of Storch Engineers), and Laurence
Storch (former Management Committee member of Storch Engineers).
The defendants move to dismiss all counts of Rook's complaint for
failure to state claims upon which relief can be granted.  Fed.
R. Civ. P. 12(b)(6).  Defendants also move to dismiss Rook's
breach of contract and breach of fiduciary duty claims on the
ground that the statute of limitations has run on both.  In
addition, defendants move to dismiss for lack of subject matter
jurisdiction, Fed. R. Civ. P. 12(b)(1), arguing that Rook's
complaint fails to seek relief in excess of the minimum

jurisdictional amount. 28 U.S.C. § 1332. Finally, defendants contend that Rook fails to plead fraud and mistake with the requisite particularity. Fed. R. Civ. P. 9(b). For the reasons discussed below, defendants' motion to dismiss is denied.

## I. Background

Rook, a New Hampshire resident, was a general partner in Storch Engineers and managed its branch office in Manchester, New Hampshire. The partnership is a New Jersey general partnership with its principal place of business in New Jersey. Laurence Storch resides in Washington, D.C., and Herbert Storch resides in Florida.

Rook and his partners defined the rights, duties, and obligations of their business relationship in a May 6, 1986, partnership agreement. That agreement was reaffirmed on five occasions, the last time being December 7, 1990. Rook alleges that the purpose behind renewing the partnership contracts was to "reflect the addition of new Partners, and the retirement of existing Partners."[1] (Rook Obj. at 2, ¶ 5.)

---

[1] Defendants take issue with Rook's characterization of these alterations of the partnership agreement, arguing that a new partnership was formed with each change in membership. Defendants do not, however, assign any legal significance to this characterization other than to argue that plaintiff should have

2

This suit, in a nutshell, concerns the propriety and fairness of a partnership's post-retirement "buyout" of one of its general partners. At issue is the final valuation of Rook's partnership interest and the exclusion of certain partnership earnings (those placed in "reserve" and "unallocated capital" accounts) from that value. Additionally, plaintiff maintains that when he periodically purchased "points" (one-percent interests in the partnership's assets and liabilities), he was overcharged by the partnership. This overcharging, Rook argues, overvalued his liabilities to the partnership. Rook had signed promissory notes for each point purchase, and payment for those points was to be deducted from his capital account. The value of Rook's capital account was allegedly an integral element of the buyout formula.

Rook also claims that the value of his capital account was understated since the partnership failed to transfer to Rook's account the value of portions of other retiring partners' capital accounts purchased by Rook during his tenure as a partner.

---

discovered his injuries upon each dissolution and re-formation of the partnership. See supra Section II.B.

3

Rook further maintains that when he made repeated efforts to determine the true value of his interest, the partnership ignored each of his requests for an accounting.

## III. Discussion

The defendants advance four distinct arguments in support of their motion to dismiss plaintiff's complaint. First, defendants contend that all Counts of plaintiff's complaint fail to state claims upon which relief can be granted. Second, defendants argue that the statue of limitations has run on plaintiff's breach of contract and breach of fiduciary duty claims. Third, defendants moves to dismiss the entire action for failure to satisfy the jurisdictional amount. Finally, defendants maintain that plaintiff has not pled fraud and mistake with particularity. The court will address each of these arguments in turn.

### A. Failure to State a Claim

#### 1. Standard of Review

In assessing a motion under Fed. R. Civ. P. 12(b)(6), the plaintiff's factual allegations must be taken as true and every reasonable inference helpful to the plaintiff must be indulged.

4

<u>Garita Hotel Ltd. v. Ponce Federal Bank, F.S.B.</u>, 958 F.2d 15, 17
(1st Cir. 1992).  Great specificity is not required, so long as
the defendant has a sufficient basis from which to frame a
responsive pleading.  <u>Id</u>.  The motion to dismiss should be
granted only where "it clearly appears, according to the facts
alleged, that the plaintiff cannot recover on any viable theory."
<u>Correa-Martinez v. Arrigala-Belendez</u>, 903 F.2d 49, 52 (1st Cir.
1990) (citing <u>Conley v. Gibson</u>, 355 U.S. 41, 45-48 (1957)).

### 2. Choice of Law

A federal court sitting in diversity must, of course, apply
state substantive law.  <u>Crellin Technologies, Inc. v.</u>
<u>Equipmentlease Corp.</u>, 18 F.3d 1, 4 (1st Cir. 1994) (citing <u>Erie</u>
<u>R.R. v. Tompkins</u>, 304 U.S. 64, 78 (1938)).  In choosing the
appropriate state law, the court implements the choice-of-law
analysis of the forum state.  <u>Crellin</u>, 18 F.3d at 4 (citing
<u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 491 (1941)).
In their partnership agreement, the parties have chosen New
Jersey substantive law to govern the interpretation and
construction of the contract.[2]  New Hampshire courts, as a rule,

---

[2] While neither party has directly addressed the choice-of-
law issue, both parties rely extensively on New Hampshire law in
their briefs.  Absent an indication from the parties that,

5

will honor a contractual selection of controlling law, so long as "the contract bears any significant relationship to that jurisdiction." Ferrofluidics Corp. v. Advanced Vacuum Components, Inc., 968 F.2d 1463, 1467 (1st Cir. 1992) (citing Allied Adjustment Serv. v. Heney, 125 N.H. 698 (1984)); McCarthy v. Azure, 22 F.3d 351, 356 n.5 (1st Cir. 1994). In this case, the partnership agreement was executed in New Jersey. The partnership itself was created in New Jersey and has its principal place of business in that state. Because the partnership contract bears a significant relationship to the state of New Jersey, the court will honor the contracting parties' choice of New Jersey substantive law.

### 3. Plaintiff's Claims

In light of the applicable standard of review and the appropriate choice of substantive law, the court next considers whether Rook has asserted cognizable claims.

### a. Breach of Contract

---

subsequent to the most recent partnership agreement, they have agreed to apply the law of a forum other than New Jersey, this court will treat as valid their contractual selection of New Jersey law.

6

Rook alleges that he was repeatedly overcharged when he signed promissory notes for the purchase of partnership points, that the value of the portions of other partners' capital accounts that he purchased was not credited to his capital account, and that partnership profits were improperly withheld from distribution in "reserve" and "unallocated capital" accounts. Each of these actions by the partnership allegedly contravenes provisions in the agreement. The cumulative effect of the described breaches, claims Rook, was the improper reduction of his final buyout price by at least $200,000.

Under New Jersey law, breach of a partnership agreement can give rise to an action for breach of contract. See Notch View Assoc. A.D.S. v. Smith, 615 A.2d 676, 680 (N.J. Super. Ct. Law Div. 1992); Friedman v. Golden Arrow Films, Inc., 442 F.2d 1099, 1108-1109 (2d Cir. 1971). Construed in a light most favorable to Rook, his allegations are sufficient to state a claim for breach of contract.[3]

---

[3] Under New Jersey partnership law, consistent with the majority rule, a partner may not sue another partner at law for breach of contract unless there has been a previous accounting or settlement of partnership affairs. Notch View Assoc., A.D.S. v. Smith, 615 A.2d 676, 679 (N.J. Super. Ct. Law Div. 1992). There are, however, several exceptions to this rule. See generally 59A Am. Jur. 2d, Partnership § 550-559 (Lawyers Co-op ed. 1987). Since the parties have not raised or briefed the issue, however, the court will not address the applicability of this rule or its

## b. Breach of Fiduciary Duty

Rook maintains that under the terms of the partnership agreement, and New Jersey law, the partners owed him a fiduciary duty to exercise the utmost good faith, loyalty, and candor with respect to internal and external partnership affairs. That duty, claims Rook, was violated when the defendants refused to provide timely and complete information about partnership affairs, and when the defendants permitted the partnership and/or its agents to both overstate Rook's liabilities to the partnership and understate his interest in it.

In Stark v. Reingold, 113 A.2d 679, 684 (N.J. 1955), the New Jersey Supreme Court held that "the relationship of co-partners [is] `one of trust and confidence, calling for the utmost good faith, permitting of no secret advantages or benefits.'" Id. (citations omitted). Quoting Chief Judge Cardozo's memorable language in Meinhard v. Salmon, the Stark court noted that "`[a] [partner] is held to something stricter than the morals of the marketplace. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior.'" Stark, 113 A.2d at 684 (citing Meinhard v. Salmon, 164 N.E. 545, 546 (N.Y. 1928).

exceptions to the claims in the present action.

8

Application of fiduciary duties to the appraisal and buyout of a withdrawing partner was explored in <u>Heller v. Hartz Mountain Indus., Inc.</u>, 636 A.2d 599 (N.J. Super. Ct. Law Div. 1993). In <u>Heller</u>, a resigning partner complained that the appraisal of his interest, necessary for calculating his buyout figure, was undervalued by over $80,000 and, thus, was "shockingly low." <u>Id</u>. at 601. The court held, in part, as follows:

> In this court's view, a partner managing the buyout of a withdrawing former partner continues to have the burdens of a fiduciary, despite their diverging economic interests. Nothing short of complete candor and openness in matters related to the valuation of assets is required. This does not imply that the continued application of fiduciary standards precludes disagreement. It does not. It requires only that disagreement be resolved by punctilious attention to the demands of honesty, candor and fairness. Thus, an appraisal obtained by the partner managing the buyout of a former partner may be set aside where that appraisal is the product of a process which lacks openness or fundamental fairness.

<u>Id</u>. at 604. Rook's allegations, considered in light of the broad fiduciary standards imposed upon partners by New Jersey law, sufficiently state a claim for breach of fiduciary duty against the defendants.

9

### c. Demand for Accounting

Rook contends that his repeated requests for information concerning his interest in the partnership were ignored by the partnership's Management Committee and its accountant. Allegedly, the defendants refused to provide him with full information and a truthful explanation relating to his interests. Further, according to Rook, the partnership agreement provides that "[e]ach partner shall: . . . (d) be just and faithful to the other partners and at all times give to the other partners full information and truthful explanation of all matters relating to the affairs of the partnership." (Rook Compl. at 6, ¶ 25.)

A partner's right to an accounting has been described by New Jersey's legislature:

> Any partner shall have the right to a formal account as to partnership affairs:
> a. If he is wrongfully excluded from the partnership business or possession of its property by his copartners;
> b. If the right exists under the terms of any agreement;
> c. As provided by section 42:1-21 of this title;
> d. Whenever other circumstances render it just and reasonable.

N.J. Stat. Ann. § 42:1-22 (West 1996).  Rook has alleged facts sufficient to state a claim for a formal accounting under § 42:1-22(b).  Taking as true the assertion that Rook was contractually entitled to "full information and a truthful explanation" of all partnership affairs, it can be fairly inferred that he is entitled to an accounting of his partnership interest under that clause of the partnership agreement.  Additionally, Rook has alleged elsewhere in his complaint that he has been wrongfully excluded from sharing in partnership profits because they were improperly placed in certain accounts.  These allegations can be read as asserting a cognizable claim for an accounting under § 42:1-22(a).

## B. Statute of Limitations

Contractual choice of law provisions are generally understood to incorporate only "substantive" law, not "procedural" law such as statutes of limitations.[4]  Phelps v. McClellan, 30 F.3d 658, 662 (6th Cir. 1994); National Iranian Oil Co. v. Mapco Int'l, Inc., 983 F.2d 485, 494 (3d Cir. 1992); FDIC

---

[4] Of course, statutes of limitations have long been held to be "substantive" for Erie purposes.  "[T]his does not mean that they are `substantive' for purposes of choice of law provisions." Gluck v. Unisys Corp., 960 F.2d 1168, 1180 n.9 (3d Cir. 1992).

v. Petersen, 770 F.2d 141, 142-43 (10th Cir. 1985). Therefore, the normal choice of law rules determine the applicable statute of limitations. Here, the court must apply New Hampshire's statute of limitations. See Keeton v. Huster Magazine, Inc., 131 N.H. 6, 13 (1988); Lareau v. Page, 39 F.3d 384, 387 (1st Cir. 1994); Molinar v. Western Elec. Co., 525 F.2d 521, 531 (1st Cir. 1975), cert. denied, 424 U.S. 978 (1976).

New Hampshire's statute of limitations, regarding personal actions, states in pertinent part:

> all personal actions . . . may be brought within 3 years of the act or omission complained of, except that when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission, the action shall be commenced within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of.

N.H. Rev. Stat. Ann. § 508:4 (1994). In Black Bear Lodge v. Trillium Corp., 136 N.H. 635, 638 (N.H. 1993), the New Hampshire Supreme Court held that the "discovery" rule, embodied in § 508:4, is applicable to contract actions.

Rook argues that a series of breaches over the course of the partnership caused his liabilities and interests with respect to

12

the partnership to be misstated. The cumulative and final effect of the breaches was the improper reduction of Rook's final buyout price by at least $200,000. The "improper" calculation of his buyout in 1995, argues Rook, is the gravamen of his complaint and the true injury. Rook claims that he did not realize the breaches occurred, and that he did not realize he was injured, until after the final buyout figure was communicated to him. He did not discover injury earlier, in part, because of an alleged provision of the partnership agreement which assured him that "[a]ll gains, profits, and increases which shall come, grow or arise from or by means of said partnership business shall be divided among said partners . . . ." (Rook Obj. at 10-11.)

The defendants counter-argument is essentially that each alleged past incident of overcharging and undervaluing constitutes an independent breach that is now time-barred because Rook, using due diligence, should have discovered that he suffered injuries well before the calculation of his buyout. This is particularly true, the argument continues, because each renewal of the partnership agreement actually constituted a dissolution and re-formation that should have alerted Rook to any injuries he suffered. In Black Bear Lodge, the Court held that questions of this sort are factual in nature. 136 N.H. at 638.

13

Thus, where the plaintiffs alleged that upon discovery of the injury they made "repeated and continuous efforts to discover the cause," the trial court erred in dismissing the complaint based on a finding that the cause of the injury should have been discovered earlier.  Id.  The Court ruled that it was an improper point in the proceedings to dismiss the claim, and that a hearing on the factual issue of "reasonable diligence" was required.

As in Black Bear Lodge, it would be improper to dismiss plaintiff's claim on the factual issue of "reasonable diligence" at this stage of the proceedings.  Rook has alleged that he discovered his injury in 1995, when his buyout was calculated.  He then engaged in "forensic accounting" to determine the causes of that injury.  Moreover, he alleges that he repeatedly requested full information and explanations as to his partnership interest prior to his buyout but was denied access to the information he sought.  Taking those allegations at face value, the principles of Black Bear Lodge apply here.

## C. Amount in Controversy

Defendants contend that this court lacks subject matter jurisdiction under 28 U.S.C. § 1332, because Rook has failed to state a claim for damages in excess of $50,000.  In ¶40 of Rook's

14

complaint, he alleges that he has "suffered damages in an amount in excess of Fifty Thousand Dollars ($50,000), exclusive of interest and costs."  Rook states further, in ¶34, that "[t]he net result of these breaches was an improper reduction of Rook's final buy-out of at least $200,000."

Rook's bare allegation of damages is sufficient at first blush to satisfy the amount in controversy requirement. Department of Rec. and Sports of Puerto Rico v. World Boxing Ass'n, 942 F.2d 84, 88 (1st Cir. 1991).  Where, however, the defendant challenges the validity of the asserted amount in controversy, as defendants have here, the plaintiff must allege particular facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount. Department of Rec. and Sports of Puerto Rico, 942 F.2d at 88; St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-289 & n.10 (1938).  Here, Rook alleges in detail the individual components of the $200,000 he claims.  (Rook Compl. at 2-5.)  In light of these particular allegations, it does not appear to a legal certainty that the amount in controversy is less than $50,000.  To the contrary, it appears that the amount in controversy exceeds the jurisdictional amount by a wide margin.

15

Therefore, defendants' motion to dismiss for failure to satisfy the amount-in-controversy requirement is denied.

### D. Failure to Plead with Particularity

Defendants also argue that plaintiff has failed to plead fraud and mistake with particularity, as required by Federal Rule of Civil Procedure 9(b). Rook does not purport to assert a cause of action for fraud, nor does he allege mistake. His pleadings advance neither theory, so Rule 9(b) is inapplicable. Therefore, Rook's complaint survives defendants' motion to dismiss for failure to plead fraud and mistake with particularity.

### III. Conclusion

In light of the foregoing, defendants' motion to dismiss (document no. 4) is denied.

SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

June 5, 1996

cc:  Daniel P. Schwarz, Esq.
     Richard F. Johnston, Esq.
     Ralph Drury Martin, Esq.

16