**Donald WEIL, et al., Appellants**

v.

**Edward A. MARKOWITZ, et al. (Two Cases).**

**TMG ASSOCIATES CUSTODIAL COMMITTEE, et al., Appellants**

v.

**MONETARY GROUP LIMITED, et al. (Two Cases).**

Nos. 85–6002, 85–6003, 85–6110 and 85–6111.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 15, 1986.

Decided Sept. 22, 1987.

See also, D.C., 108 F.R.D. 113.

Allan I. Mendelsohn, with whom Marvin L. Szymkowicz, Washington, D.C., was on brief, for appellants.

Charles S. Fax, for appellees. Austin J. Doyle, Jr., Washington, D.C., and Harry A. Suissa, Chevy Chase, Md., were on brief, for appellees.

Joseph Semo, Washington, D.C., was on brief, for amicus curiae.

Before STARR and SILBERMAN, Circuit Judges, and McGOWAN, Senior Circuit Judge.

McGOWAN, Senior Circuit Judge:

In these appeals, two limited partnerships (appellants) assert that the District Court abused its discretion in its modification and entry of a settlement agreement, as well as in several rulings that preceded settlement. The settlement disposed of two actions: in the first, one of the appellants (TMG II) brought suit against Edward A. Markowitz, Debra Strahan, and three corporate defendants, alleging that these five had diverted partnership property and business to themselves in violation of state and federal laws, and seeking equitable and monetary relief. In the second, the other appellant (Custodial Committee) made similar claims and sought similar relief against Markowitz and two corporate defendants.

These suits coincided with a criminal investigation of the same defendants by the Internal Revenue Service, an investigation that began shortly before the filing of the first civil complaint and ended shortly after the parties reached settlement. This investigation had prompted the defendants to move repeatedly but unsuccessfully for a stay of civil proceedings, assertedly to avoid incriminating responses to discovery requests. The District Court denied the last of these motions in an order suggesting that the motion had been filed in violation of Rule 11 of the Federal Rules of Civil Procedure. Subsequently, the United States intervened, seeking and obtaining a stay, ostensibly to protect its continuing investigation of the defendants and others. The principal parties in the civil suit reached settlement thereafter, but their agreement excluded Strahan. The District Court entered the agreement, and also dismissed Strahan as a defendant, in an order on September 3, 1985 (settlement order), that closely followed Markowitz's guilty plea to four counts of felony tax fraud in the criminal case.

Appellants here challenge the District Court's entry of the settlement order, its dismissal of Strahan from the suit, its failure to impose sanctions for the apparent Rule 11 violation, and its stay of discovery on a motion of the United States Attorney for the Southern District of New York supported by *ex parte* affidavits. For the reasons that follow below we: (1) remand the District Court's order suggesting that a Rule 11 violation occurred for clarification and possibly for sanctions; (2) affirm the District Court's approval of the settlement agreement; (3) vacate and remand judgment as to defendant Strahan, who was improperly dismissed from the lawsuit; and (4) remand to the District Court's consideration, without passing on the propriety of the contested stays, the question of whether the settlement order should be entered *nunc pro tunc*.

I.

Appellant TMG II began the proceedings below on December 12, 1983, by filing No. 83–3685 against Edward A. Markowitz, Debra Strahan, and three corporate defendants.[1] Markowitz was the managing gen-

---

1. These corporate defendants were Monetary Services Corporation; The Monetary Group, NV; and Monetary Government Securities, Inc.

    The corporate defendants are referred to as follows:

    Monetary Group, Ltd. as "MGL"

    Monetary Group, N.V. as "NV"

    Monetary Group Government Securities, Inc. as "GSI"

    Monetary Services Corp. as "MSC"

    All litigation on behalf of TMG II, including this appeal, was brought in the name of Donald

eral partner of TMG II, a New York limited partnership formed in 1980; Markowitz also was the president and sole shareholder of the corporate defendants. One of these corporate defendants, MGL, served in turn as the corporate general partner of another limited partnership, TMG Associates, which was formed in 1979. The IRS investigation that ultimately led to Markowitz's undoing prompted him and MGL to resign from their respective posts as general partners on November 15, 1983. In response to MGL's resignation, the remaining limited partners of TMG Associates formed a Custodial Committee, to look after their interests. This Custodial Committee brought an action, No. 84–1680, against Markowitz, MSC, and MGL on May 31, 1984.

Both TMG II and TMG Associates purportedly were formed as broker-dealers and market-makers in the commodities and metal markets. Under Markowitz's direction, however, the actual business of the partnerships apparently became the creation of marketable tax losses through sham transactions in precious metals and government securities. D.E. 20. These schemes ended with the criminal investigation, and with allegations by Markowitz's partners that he and Strahan had diverted partnership business and property to themselves. TMG II initially sought an equity accounting, monetary repayment, and injunctive relief. D.E. 1. On January 20, 1984, TMG II amended its complaint, asking the court to void certain allegedly fraudulent transfers of property to Strahan, and to award damages for violations of the Commodities Exchange Act, 7 U.S.C. §§ 1–26 (1982), and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68 (1982 & Supp. III 1985). D.E. 45.

The Custodial Committee, too, joined claims for equitable relief against the partners with parallel claims for damages against the corporate defendants. In its five-count complaint, the Custodial Committee requested an equity accounting and repayment of money either misappropriated by Markowitz and MGL, or lost as a result of mismanagement or breaches of fiduciary duty. Violations of the Commodities Exchange Act, 7 U.S.C. §§ 1–26, also were alleged. D.E. (84–1680) 1.

Before the Custodial Committee had even filed suit, however, Markowitz repeatedly filed motions to dismiss or to stay all civil proceedings in which he was a named defendant. Markowitz filed the first of these motions, none of which succeeded, on December 20, 1983, arguing that he could only respond truthfully to civil discovery by compromising his fifth amendment right against self-incrimination. D.E. 13; Supporting Memorandum in D.E. (84–1680) 1. Markowitz and the corporate defendants then started a series of motions to dismiss the action on either jurisdictional or substantive grounds, or both. Markowitz also renewed his request for a stay, in an oral motion of February 9, 1984, which was denied from the bench. Unnumbered D.E. between 96 and 97. He moved a third time for a complete stay of all proceedings on March 4, 1984.

This third motion again was based on what Markowitz described as the active government investigation of him and other defendants in which, Markowitz asserted, TMG II and its counsel were cooperating by permitting access to discovery responses. In opposing the motion, TMG II asserted that Markowitz had failed, on the merits, to justify a total stay of proceedings pending the outcome of the criminal investigation, and asserted that the motion was interposed for delay in violation of Rule 11. On April 4, 1984, the court denied the motion, stating that "it appeared that the motion was filed in violation of Rule 11."

The government, by contrast, was able to secure the stay that eluded Markowitz. Even though Donald Weil and TMG II's counsel were cooperating with the govern-

---

Weil, its remaining general partner, who had a 35% general partnership in TMG II but who had no day-to-day responsibilities.

All references to the certified Docket Entries in C.A. 83–3685 are in the form of "D.E. ____".

All references to the certified Docket Entries in C.A. 84–1680 are in the form of "D.E. (84–1680) ____."

ment, the United States Attorney for the Southern District of New York moved to intervene in No. 83–3685 and to stay all discovery, based on the government's asserted need to protect the Markowitz investigation. The motion for a stay was supported by an affidavit of an Assistant U.S. Attorney and by a second, separate affidavit, which was filed by the government *ex parte* and without notice to opposing counsel. On the basis of these submissions, the government was granted a provisional stay of discovery on May 7, 1984.

In its motion for a stay, the U.S. Attorney charged that Weil and his counsel were intentionally misusing discovery to get an illicit preview of the government investigation, and disclosed that all of the parties to the civil suit were subjects of that same investigation. At a hearing on the motion on May 10, 1984,[2] TMG II opposed entry of the stay and argued, in the alternative, that the blanket stay of indefinite duration requested by the government would be unwarranted in fact and law.

On the morning of the hearing, the contents of the *ex parte* affidavit, which mistakenly was put in the public record, were reported in the Wall Street Journal. The article disclosed many aspects of the government's continuing investigation, including Markowitz's plea agreement with the IRS, his ongoing cooperation with the government investigation, and the nexus between the investigation and the limited partnerships. Record Excerpt (R.E.) 14. The next day, the government publicly but belatedly moved to file the *ex parte* affidavit under seal.

The court continued the interim stay in a May 15 order but ruled that a blanket stay of discovery and trial proceedings would be too drastic a remedy. Instead of limiting the scope of its request, the government filed two more *ex parte* affidavits, one on May 22 and one on May 23, 1984. The District Court sealed both communications on May 24, and the U.S. Attorney later filed a motion for leave to file the *ex parte* documents. D.E. 246.

On June 6, 1984, without reference to its May 15 order, the District Court granted a stay of all discovery and pretrial briefing obligations.[3] At a later hearing to determine whether the *ex parte* affidavits should be made available to TMG II, the District Court denied TMG II's motion opposing the stay. The court revealed that the *ex parte* materials alleged that Weil was a target, not merely a subject, of the government's investigation, but refused TMG II's limited partners any access to the materials, which have not been disclosed since. The government proceeded to file additional *ex parte* materials to support a stay in No. 84–1680, which the District Court granted on August 1, 1984. D.E. (84–1680) 18–20, 25.

The stays in both actions expired by their own terms on September 14, 1984. One month later, the government applied to the District Court for entry of an order, in both actions, rescinding its intervention *nunc pro tunc* to the date intervention was granted; the court entered an order to that effect, but only in No. 84–1680. Not only had the stays insulated the criminal investigation from civil discovery, but they also had afforded the government time to secure large tax liens against Markowitz and one of the corporate defendants (NV), shortly before settlement negotiations in the civil case began in February, 1985.

**2.** Among those personally appearing on behalf of the United States were two Assistant U.S. Attorneys for the Southern District of New York; the Chief of the Criminal Division, U.S. Attorney for the District of Columbia; the Executive Assistant U.S. Attorney for the District of Columbia; the U.S. Attorney for the District of Columbia; and the Deputy Assistant Attorney General for the Tax Division, United States Department of Justice.

At this hearing, the U.S. Attorney for the District of Columbia advised the court that the motion for stay had been improvidently filed and would be "supplanted" by a subsequent pleading. Tr. at 7–8. Later the same day, a new pleading was filed stating that discovery should be stayed not because Weil allegedly had misused discovery, but to prevent his doing so in the future. D.E. 236, Memorandum at 13–14.

**3.** TMG II opposed entry of any stay of discovery, D.E. 232, 240, and unsuccessfully sought reconsideration of the June 6, 1984 stay. D.E. 259.

After two settlement conferences conducted by a court-appointed magistrate, appellants submitted a comprehensive settlement proposal to the defendants on April 8, 1985, with language discharging and releasing claims not only of the partnerships, but of the limited partners as well. Subsequent versions of the draft settlement agreement were exchanged among the parties on April 17 and 22, 1985.

As of the April 22 draft, the parties agreed that Markowitz and the corporate defendants would consent to a money judgment of approximately $900,000, and that Debra Strahan would be excluded from the settlement's operation. The general release language never was changed, and was retained in the final agreement as executed. On April 24, 1985, a copy of the settlement agreement, without signatures of the parties but with counsel's signatures, was forwarded to the District Court.[4]

The next day, Markowitz pled guilty to a four-count criminal information of tax fraud filed in the United States District Court for the Southern District of New York. A copy of the criminal information was included with the settlement proposal when the District Court ordered plaintiffs' counsel to transmit the proposal to the limited partners early in June, pursuant to a provision in the agreement that each of the limited partners be given personal notice of the proposed settlement and an opportunity to voice objections. R.E. 18 at 7–8. The comments were to aid the court, in the exercise of its discretion, to determine if the settlement should be entered, rejected, or modified.[5]

A majority of TMG II and TMG Associates partners opposed the settlement offer, airing their views in written comments to the court, at a hearing before the magistrate, and in final memoranda. The magistrate, citing these objections by the partners and the untimely guilty plea by Markowitz, recommended rejection of the settlement agreement.[6]

The District Court rejected the magistrate's report and entered the settlement, substantially as proposed, precluding the partnerships, as entities, from suing with respect to the fraud to which Markowitz had admitted guilt. The court made two modifications pertinent to this appeal. First, the court responded to the limited partners' objections by removing the individual limited partners from the settlement, thereby permitting them to sue in their individual capacity;[7] second, the court inserted Strahan as a party to the settlement, effectively dismissing her as a party to the lawsuit, essentially because of her limited resources.

## II.

### A. The Rule 11 Issue

In opposing Markowitz's third motion for a stay, TMG II alleged that the motion violated Rule 11 and entitled TMG II to sanctions, specifically attorney's fees. Appellants assert that the District Court's order of April 4, 1984, stating that "it appear[ed] that the motion was filed in violation of Rule 11,"[8] compelled imposition of

---

4. During the negotiations, the partnerships demanded that the settlement document include a characterization of Markowitz's conduct as one sounding in fraud or embezzlement. D.E. 522 at 7. The actual settlement language that emerged was free of any references to fraud or embezzlement. D.E. 501; R.E. 18.

5. This discretion derives in part from paragraph six of the agreement, which provides that, after receipt and consideration of the limited partners' comments, "the Court may, in its discretion modify this order upon a showing of good cause by one or more commentors." D.E. 501; D.E. 510.

6. The magistrate did not find that Markowitz or his counsel had acted in "bad faith" by not

disclosing the plea during the settlement discussions. D.E. 522 at 8.

7. The court concluded that the individual partners were not, and had not been, parties to these suits. D.E. 540; R.E. 10 at 2.

8. The specific language of the order reads:
Upon consideration of defendant Markowitz's third motion for a stay of all proceedings as to him and the opposition thereto, and it appearing that the motion was filed in violation of Rule 11, Federal Rules of Civil Procedure, it is this 3d day of April, 1984, hereby ORDERED: that defendant's motion is DENIED.
D.E. 187.

sanctions. Appellees, while perhaps conceding the violation,[9] counter that appellants waived their right to sanctions. Both parties claim that their position has been buttressed by subsequent events: appellants claim that the violation has been revealed as more serious than appeared at the time, Br. of Appellant at 39–41; appellees claim that the government's successful motion for a stay precludes a finding that its own motion for such relief was impermissible under Rule 11. Br. of Appellee at 55–58.

The District Court did not act on the initial sanctions request, and the wording of the order makes it unclear whether the court found a Rule 11 violation. The court does not mention what sort of abuse it identified in the motion, denying us a basis on which to review the order. More importantly, the court's use of the word "appearing" is ambiguous, compelling a remand to determine if the court did in fact find a violation. Therefore, we remand to the District Court for further explanation and clarification as to whether the April 4 order found a Rule 11 violation.

█ If, on remand, the District Court concludes that it did find a violation, it must impose appropriate sanctions. Rule 11's wording, that the court "shall impose" sanctions for violations, eliminates the court's discretion to forego sanctions once it has found a violation of the rule.[10] *See, e.g., Westmoreland v. CBS, Inc.,* 770 F.2d 1168, 1174, 1179–80 (D.C.Cir.1985); *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 n. 7 (2d Cir.1985). The current obligation to impose sanctions under Rule 11 contrasts, as we have noted before, with the more permissive approach to sanctions that obtained prior to 1983 amendments to the rule. *See Westmore-*

*land,* 770 F.2d at 1174 n. 8; *see also Eastway Construction Corp.,* 762 F.2d at 254 n. 7.

Despite the plain requirements of the rule, appellees claim that TMG II "waived" its right to sanctions by not renewing its motion for attorney's fees when it had an opportunity to do so. Br. of Appellees at 56–57. We are not aware, however, of any duty requiring that once such a motion is made, it must be renewed to prevent waiver. Nor did the settlement agreement effect such a waiver: assuming (without deciding) that a party has the power to "waive" sanctions, such a provision would have to be more explicit than any presented in the settlement agreement. *Cf. Chapman & Cole v. Itel Container Int'l B.V.,* 116 F.R.D. 550, 552 (S.D.Tex.1987) (settlement agreement no bar to Rule 11 sanctions).

The District Court does, however, retain discretion to tailor Rule 11 sanctions as appropriate to the facts of a particular case. Rule 11 (Notes of Advisory Committee to 1983 Amendment); *Eastway Construction Corp.,* 762 F.2d at 254 n. 7. We leave the District Court, if it should decide that there was a violation, free to decide the appropriate sanction on remand, noting particularly that an award of attorney's fees might well be considered inappropriate in light of the entry of the settlement agreement purporting to settle all claims.

**B. The Settlement Agreement**

█ Appellants urge several challenges to the District Court's entry of the settlement order. At the outset, however, we must stress the limited scope of our review of such orders. Appellants must show that the District Court abused its discretion:

> If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

---

**9.** Appellees' counsel appear to concede that the District Court *had* found a Rule 11 violation. *See* Br. of Appellees at 14 ("Given the Court's previous finding that Mr. Markowitz had violated Rule 11 ..."). We cannot accept their characterization as determinative without a clearer ruling from the District Court.

**10.** Rule 11, in pertinent part, provides as follows:

this generally requires a showing either that the agreement in question was so manifestly unfair as to preclude judicial approval, or that the court did not have sufficient facts before it to make an informed judgment.[11] The appellants here raise essentially three objections to the settlement order, all sounding in the fairness of, rather than the factual basis for, the settlement agreement.

The first of these raises the timing of Markowitz's guilty plea, and the appellants' failure to disclose the plea agreement during settlement negotiations. This was a concern noted by the magistrate, who apparently accepted appellants' argument to this Court that the partnerships were unfairly surprised by the announcement of the guilty plea, and that they would not have signed had they known about it earlier.

There was ample reason for the District Court to reject this contention as baseless. All parties knew as early as May 4, 1984, when the government sought to intervene in order to seek a stay, that Markowitz, Weil, and TMG II were all subjects of a tax fraud investigation. Six days later, Markowitz's plea agreement with the government was trumpeted in the front page Wall Street Journal article, and counsel for the partnerships admitted to the District Court that he had seen the article. Unnumbered D.E. between 525 and 526 at 67. The article generated a series of articles in other national newspapers and magazines that left no ambiguity as to the substance of the guilty plea or the involvement of the partnerships.[12]

Under these circumstances, it was within the District Court's discretion to consider the claim of unfair surprise implausible. The partnerships were free, upon the government's intervention and the attend-ant publicity, to make Markowitz's plea a subject of settlement bargaining. But at no time during the settlement discussions did the partnerships request, as a condition of settlement, any representation from Markowitz with respect to the criminal investigation. Nor did the partnerships request or secure from Markowitz an indemnification for individual tax losses that they might incur by virtue of any plea agreement.

Appellants contend next that the rejection of the proposed agreement by the limited partners is a basis for finding error in the District Court's approval of the settlement. See Br. of Appellants at 34. This, too, was one of the reasons the magistrate recommended against entry of the settlement order. Since the magistrate's report, however, the District Court has answered this contention by striking from the settlement order the provision releasing Markowitz and the corporations from the limited partners' individual claims. See D.E. 539, August 30, 1985 Memorandum at 5. Individual partners, as distinct from the partnerships as entities, can still bring suit against Markowitz and the corporations for fraud or for disappointed tax expectation. By excluding the limited partners from the operation of the agreement, the District Court already has given effect to the partners' vote.

The individual release provision was of considerable value to Markowitz and formed a material part of the consideration in exchange for which he had agreed to suffer a monetary judgment. When the District Court struck this provision, it did not reduce the amount of the judgment against Markowitz and the corporations, thereby giving the partnerships a considerable advantage for which they had not bar-

11. See, e.g.; Patterson v. Stovall, 528 F.2d 108, 114 (7th Cir.1976) (requirement in judging appropriateness of settlement is whether trial court had sufficient facts before it to make informed judgment); Glicken v. Bradford, 35 F.R.D. 144, 151 (S.D.N.Y.1964) (question raised as to whether settlement, taken as a whole, was so facially unfair as to preclude judicial approval).

12. The specific details of the fraudulent scheme were discussed in elaborate detail in a Washington Post article dated May 21, 1984. The author summarized the IRS allegations that the alleged transactions managed by Markowitz never took place. See D.E. 517, Ex. E.

Articles appeared also in The New York Times, Barrons, Business Week, and other publications. D.E. 517, Exs. B–G.

gained. This belies any claim of unfairness to the appellants.

Finally, appellants contend that the settlement order deprived the limited partners of a full final accounting of partnership affairs from Markowitz. Br. of Appellants at 47–52. Appellants correctly contend that they had a right to an equity accounting of partnership affairs, and that such an accounting would be a condition precedent to any other form of relief between partnership members.[13] Appellees do not challenge the principle that a general partner has a fiduciary duty to render an accounting, but rather they assert that if the partnerships had wanted a more precise accounting than that which they sought and obtained in the settlement, they need not have negotiated the settlement agreement, and could have taken the case to trial. *See* Br. of Appellees at 49–50.

Oddly, appellants concede this point, noting authority for the proposition that a partnership accounting may be the subject of negotiation. *See* Reply Br. of Appellants at 16. The real issue, they contend, is the *conduct* of those negotiations, because the partnerships would not have accepted settlement without representations by Markowitz's counsel that there was no fraud on the record. *Id.* at 16–17. This argument, though, simply rehearses the claims of unfair surprise we considered and rejected earlier.

For the reasons stated, the District Court was well within its discretion to conclude, in spite of these claims, that appellants knew with whom they were dealing. We therefore affirm the District Court's entry of the settlement order, excepting those particular aspects of the order we consider below.

## C. Dismissal of Defendant Strahan

The District Court dismissed Strahan as a defendant by inserting her as a party to the settlement agreement, despite her refusal to sign the agreement, and despite agreement among the settling parties that she would be excluded from its operation. D.E. 507. Relying on its modification authority, the court based its dismissal on Strahan's asserted inability to pay any judgment against her.[14]

In this modification of the settlement order we conclude that the District Court abused its discretion. Initially, we note that the factual basis for this modification is wanting: the record does not reflect that Strahan is without resources to satisfy a judgment. In collateral proceedings below in C.A. 83–3685,[15] it has been reported that Strahan owns a substantial interest in District of Columbia realty, worth approximately $575,000. *See* D.E. 567.

Had the record on this issue been adequate, moreover, Strahan's limited resources still would not be a basis for dismissal. The decision as to whether the likely return on a particular claim is worth the expense of litigation is one typically left to the parties. Even if the court could reasonably conclude that Strahan cannot currently pay a judgment, appellants have the right to seek a judgment in the expectation that Strahan's financial position will

---

**13.** Both possible sources of applicable law are in agreement on these points. *See* New York Partnership Law §§ 42–44 (McKinney 1948 & Supp.1987); D.C.Code §§ 41–119–21 (1981). *See generally Newburger, Loeb & Co. v. Gross,* 563 F.2d 1057 (2d Cir.1977); *Friedman v. Golden Arrow Films, Inc.,* 442 F.2d 1099 (2d Cir. 1971).

**14.** The District Court determined

that prosecution of the few and relatively minor claims against this defendant, who has testified without contradiction as to her limited finances, would be wasteful of judicial resources and involves the expenditure of patently inordinate time, money and effort by

the limited partnership plaintiff (TMG II) in Civil Action No. 83–3685 and by defendant. D.E. 507.

The dismissal of Strahan was relief added at the specific request of her counsel. At the August 14 hearing, the court delegated to her attorney the task of formulating new final order language. *See* unnumbered D.E.'s of the same date. In addition to submitting the language, Strahan's counsel added the provision dismissing his client. D.E. 553. No hearing was held on that provision.

**15.** We are free to take judicial notice of this related proceeding in another court. *See Dupree v. Jefferson,* 666 F.2d 606 n. 1 (D.C.Cir. 1981).

improve. Judgments in the District of Columbia have a potential life of 24 years. *See* D.C.Code § 15–103 (1981). Appellants also should have the right to pursue their claims to equitable relief against Strahan, which would be unaffected by her supposed penury.

The appellants did not forfeit these rights by conferring some limited modification authority on the District Court. The settlement agreement allowed the court discretion to modify the agreement only on the basis of comments or objections tendered by the limited partners during the voting process. D.E. 501 at 8. No limited partner, either in written comments or in testimony during the hearing on the agreement, expressed the view that Strahan should be dismissed.

Because we conclude that the court overstepped its modification authority, we vacate and remand to the District Court its dismissal of Strahan. The partnerships should be free to proceed against Strahan with any claims, equitable or legal, that they might have.

### D. The Stay Issue and *Nunc Pro Tunc* Entrance of the Settlement

Appellants finally assert that the District Court erred in granting the government's motion to stay proceedings; they object particularly to the court's apparent reliance on *ex parte* materials in issuing the stay.

They ask us to rule that the government's extensive participation in No. 83–3685, premised as it was on *ex parte* materials, was improper.

Appellants contend that the *ex parte* materials and the stays had significant and deleterious effects, because they resulted in a one year delay of trial that permitted the IRS to file tax liens against Markowitz, NV, and Strahan before appellants could secure a final decree and enforce a judgment lien against them. A five day trial in No. 83–3685 was scheduled to begin October 22, 1984, and there probably would have been a final decree prior to the filing of the tax liens had the stays not issued.[16] Appellants therefore request that relief in TMG II's favor be entered *nunc pro tunc* to October 26, 1984, the scheduled concluding date for the trial on the merits of C.A. 83–3685.

■ This Court does not pass upon appellants' suggestion that entry of a stay of discovery, following *ex parte* communications by the government, was reversible error.[17] Regardless of the propriety or impropriety of the stays, the core issue here is whether justice requires entrance of the settlement *nunc pro tunc*, since this is the only remedy that would redress any injustice appellants claim to have suffered. A judgment entered *nunc pro tunc* is one given effect as of a date in the past.[18] The

---

16. *See* Br. of Appellants at 19, 66–67. Although a properly perfected federal tax lien takes priority over most other liens, a perfected judgment lien takes priority over a later-filed tax lien. IRC § 6321, 26 U.S.C. § 6321 (1982). Appellants contend the government's tax liens in this case attached prior to the District Court's judgment and decree only because of the stay. *See* Br. of Appellants at 67.

17. We agree with appellants' assertion that the entry of stays and the conduct of most judicial actions *ex parte* are generally disfavored in American jurisprudence. *See Abourezk v. Reagan*, 785 F.2d 1043, 1060 (D.C.Cir.1986) (discussing *in camera* review of *ex parte* government affidavits), *cert. granted,* —— U.S. ——, 107 S.Ct. 666, 93 L.Ed.2d 718 (1986); *Military Audit Project v. Bush*, 418 F.Supp. 876, 878 (D.D.C. 1976).

A total stay of civil discovery pending the outcome of related criminal matters is an extraordinary remedy appropriate for extraordi-

nary circumstances. *See Gordon v. FDIC*, 427 F.2d 578 (D.C.Cir.1970); *SEC v. Dresser Industries*, 628 F.2d 1368, 1376 (D.C.Cir.), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980). Indeed, appellees concede as much. *See* Br. of Appellees at 53. The situation at hand is even more unusual because the government attempted and succeeded in staying the discovery of information by private parties. The strength of the case law does not, however, change our belief that this Court need not attempt to unravel the complex web of facts concerning the propriety of the stays and *ex parte* communications when the only real relief available to the appellants is *nunc pro tunc* entry of the settlement order.

18. Translated literally from the Latin, the phrase means "now for then." 6A MOORE'S FEDERAL PRACTICE, ¶ 58.08 at 58–75 (1985 ed.). In reference to the rendition of a judgment, "*nunc pro tunc* signifies that there is to be a relation back to a designated past date and that the

principle underlying entry of a judgment or an order *nunc pro tunc* is that of fairness to the parties, seeking to rectify any injustice suffered by them on account of judicial delay.[19]

There are several reasons why such relief might be appropriate in this case. First, we note that the government sought, and was granted, an order rescinding its intervention *nunc pro tunc* to the date it first intervened. If the government can move the calendar back one year there is no reason why the appellants should not have an opportunity for similar relief. Second, the government's intervention was intended to protect a criminal investigation; it is unclear why the District Court's acquiescence for this narrow purpose should confer an advantage to the government in enforcing its civil tax lien.

This latter consideration makes clear, however, why we must have the District Court determine whether the entry of judgment *nunc pro tunc* for TMG II is appropriate. The government, which stands to lose its tax lien priority if judgment is entered *nunc pro tunc*, is the real party in interest as to this issue. But the government is not a party to this appeal and therefore cannot defend its interests. Accordingly, we remand so that the District Court may request from the government any evidence, argument, or briefing that it believes is necessary.

As the Supreme Court has stated, a *"nunc pro tunc* order should be granted or refused, as justice may require, in view of the circumstances of the particular case." *Mitchell v. Overman*, 103 U.S. (13 Otto) 62, 65, 26 L.Ed. 369 (1881). Entry *nunc pro tunc* thus must have a proper factual basis.[20] Our inability to appraise this factual

basis on appeal, without the participation of the real party in interest, compels our restraint. This issue is best left to the discretion of the District Court on remand.[21]

### III.

For the foregoing reasons, we affirm the District Court's modification and approval of the settlement agreement, with the exception of the dismissal of Strahan as a defendant. As to this latter issue, we vacate and remand. We also remand to the District Court the issue of whether the settlement order should be entered *nunc pro tunc*. Finally, we remand to the District Court its April 1984 Order, which suggested that a Rule 11 violation had occurred, for further clarification and for the imposition of an appropriate sanction if Rule 11 was violated.

*It is so ordered.*

---

judgment and/or entry are to be given certain anterior effects." *Id.*

19. *See, e.g., Mitchell v. Overman*, 103 U.S. (13 Otto) 62, 64–65, 26 L.Ed. 369 (1881) (where delay has been caused either for a court's convenience, or by intricacy of the questions involved, or by any other cause not attributable to the laches of the parties, the judgment or the decree may be entered retrospectively: "[i]n such cases ... it is the duty of the court to see that the parties shall not suffer by the delay").

20. *See also Moore's Federal Practice, supra* note 18, at 58–77 (citing authorities).

21. Appellants contend that the government has declined to participate in this appeal. *See* Supplemental Br. of Appellants at 5. The District Court is better situated to assess both the government's reasons for nonparticipation and the actual need for its participation.