# District of Columbia
# Court of Appeals

**No. 14-CV-339**

ROSITA JUUL,

Appellant,



FILED

FEB 16 2017

DISTRICT OF COLUMBIA
COURT OF APPEALS

v.

**CAR-5752-12**

LYNETTE RAWLINGS,

Appellee.

On Appeal from the Superior Court of the District of Columbia
Civil Division

BEFORE: WASHINGTON, *Chief Judge*; FISHER, *Associate Judge*; and NEBEKER, *Senior Judge.*

**J U D G M E N T**

This case came to be heard on the transcript of record and the briefs filed, and was argued by counsel. On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the trial court's judgment is affirmed.

For the Court:

*Julio A. Castillo*

JULIO A. CASTILLO
Clerk of the Court

Dated: February 16, 2017.

Opinion by Chief Judge Eric T. Washington.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CV-339

ROSITA JUUL, APPELLANT,

v.

LYNETTE RAWLINGS, APPELLEE.

FILED 2/16/17
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(CAR-5752-12)

(Hon. Thomas J. Motley, Trial Judge)

(Argued September 15, 2015                    Decided February16, 2017)

*Kenneth C. Crickman*, with whom *Robert C. Cooper* was on the brief, for appellant.

*John H. Brillian* for appellee.

Before WASHINGTON, *Chief Judge*, FISHER, *Associate Judge*, and NEBEKER, *Senior Judge*.

WASHINGTON, *Chief Judge*: Appellant Rosita Juul ("Ms. Juul" or "Appellant") appeals from the trial court's order to enforce a settlement agreement between appellant's son, Soren Juul ("Mr. Juul"), and appellee Lynette Rawlings ("Ms. Rawlings"). The settlement agreement effectuated the transfer of property owned by Ms. Rawlings and Mr. Juul to Ms. Rawlings' mother. Subsequently, the

tenants residing on the property assigned their rights to purchase the property under the Tenants Opportunity to Purchase Act ("TOPA" or the "Act") to appellant, who now asserts those rights on appeal. On March 12, 2014, the trial judge entered an order enforcing the settlement agreement, finding that the transfer of the property to Ms. Rawlings' mother was not a "sale" under TOPA because it was made pursuant to a "court-approved settlement" agreement and thus did not trigger the tenants' TOPA rights. Ms. Juul contends that the trial court erred in reaching that conclusion because the trial court never knew the terms of the settlement agreement, and therefore the settlement agreement could not have been "court-approved." While we agree that the settlement reached in this case was not a "court-approved settlement" at the time of the dismissal, the trial court's subsequent order enforcing the settlement agreement cured the underlying deficiencies from the original proceeding thus making this transfer of property in this case not a "sale" under TOPA . Consequently, we affirm.

## I.

On July 14, 2005, Mr. Juul gave his then-girlfriend, Ms. Rawlings, a fifty percent interest in his home by way of quitclaim deed after receiving a notice of foreclosure from his lender that the property was scheduled to be sold at public

auction. Thereafter, Ms. Rawlings obtained a loan to stop the foreclosure sale and to renovate the property. Mr. Juul and Ms. Rawlings resided together in the home for two years but in November 2007, their relationship ended, and Ms. Rawlings moved out. Mr. Juul continued to live in the home along with some tenants from whom he collected rent. After Ms. Rawlings moved out of the home, she and Mr. Juul entered into an agreement that Mr. Juul would make incremental payments to purchase the property back from Ms. Rawlings over time. By January 2012, however, Mr. Juul completely stopped making payments and Ms. Rawlings filed suit against him seeking a partition sale of the property and damages relating to the loans she acquired to complete renovations on the property.

On August 19, 2013, Ms. Rawlings and Mr. Juul entered into a settlement agreement, which required them to list the property with a professional realtor. The realtor contacted the tenants on the property to notify them of their right to purchase the property under the Tenants Opportunity to Purchase Act (TOPA).[1] No contract had been executed between Mr. Juul and Ms. Rawlings and any third-party buyers at the time. On October 31, 2013, just days prior to the scheduled trial, the parties appeared in court for a pretrial conference, which resulted in a

---

[1] D.C. Code §§ 42-3404.02 to -.14 (2016).

second settlement agreement. The second settlement agreement stated the following:

1. Lynette Rawlings' mother may submit a contract to purchase the property at a price of $455,000.00, and if she does so, the parties must ratify the contract on or before November 11, 2013.
2. If the above contract does not go through, the parties agree to ratify a contract recommended by their realtor.
3. Proceeds from the sale to Lynette Rawlings' mother would go to Lynette Rawlings.
4. Proceeds from any third-party contract would be split 50/50 between Mr. Juul and Ms. Rawlings.
5. Mr. Juul agrees to vacate the property by the closing date.
6. Mr. Juul agrees that all rent collected will be paid to the mortgage company.
7. To the extent not in conflict with this Agreement and settlement terms, the parties agree to be governed by the existing Agreement to Sell Property (the first agreement).
8. All claims are dismissed with prejudice.

The parties and their respective counsel signed the settlement agreement and announced before the trial court that they had reached a settlement. The trial court stated:

The Court: All right. What do I need to do now?

Mr. Shore (Ms. Rawlings' attorney): We've agreed as part of our settlement, to dismiss this case.

The Court: This case is hereby dismissed.

Mr. Pardo (Mr. Juul's attorney): With prejudice, your Honor, so we're all on the same page.

The Court: Pursuant to the settlement agreement is dismissed with prejudiced [sic]. Pursuant to the settlement agreement.

Mr. Shore: Correct.

The Court: That is if you don't abide by the settlement agreement you'll be back in the courthouse. Maybe not in this court, but in the courthouse.

Immediately following the execution of the settlement agreement, Ms. Rawlings' mother submitted a contract to purchase the Property for $455,000.00. Ms. Rawlings and Mr. Juul ratified the contract and scheduled closing for February 2014. The following day, the parties' realtor sent all tenants on the property a second notice of a first right to purchase the home under TOPA. The tenants assigned their right to purchase under TOPA to appellant, Mr. Juul's mother, only a few days after the parties ratified Ms. Rawlings' mother's contract. On December 24, 2013, Ms. Rawlings filed a *pro se* "Motion to Petition Reopening the Case" in the trial court alleging the settlement agreement was conducted in bad faith. Ms. Rawlings alleged in her motion that during settlement negotiations she specifically inquired about the tenants on the property, but that

Mr. Juul's attorney stated that all tenancies on the property would be voluntarily terminated and TOPA would not be relevant. Ms. Rawlings stated that she would not have entered into the settlement if she had known the tenants were going to assign their rights to appellant. Ms. Rawlings requested that the trial court vacate the settlement agreement and reopen the case. Thereafter, the trial court entered an order granting Ms. Rawlings' Motion to Reopen the Case. The trial court did not vacate the settlement agreement but instead stated that the case was reopened for "purposes of enforcing the settlement agreement." On January 23, 2014, the Court held a status hearing on the Motion to Reopen the Case. During that hearing, the Court read the eight terms of the settlement agreement and Ms. Rawlings, representing herself, stated that she was misled about the tenants on the property but that she did not believe that TOPA applied because the transfer was both an "interfamilial transfer" and "pursuant to a Court-approved settlement agreement." The Court acknowledged this possibility and ordered the parties to return in one month.

Ms. Juul intervened into the case alleging that she was a necessary party because the tenants assigned to her their right to purchase the property. Ms. Rawlings, now represented by counsel, subsequently filed a Motion to Enforce the Settlement Agreement where she argued that the transfer of property to her mother

pursuant to the settlement agreement was not a "sale" pursuant to TOPA because the transfer of the property was an *inter-vivos* transfer and because the transfer was made pursuant to a court-approved settlement.

The trial court held a hearing on Ms. Rawlings' motion and granted the Motion to Enforce the Settlement Agreement on the grounds that the transfer under the settlement agreement did not constitute a sale under TOPA because the transfer was made pursuant to a "court-approved settlement." The court also ordered Mr. Juul to cooperate with the sale of the property to Ms. Rawlings' mother and ordered the parties to comply with the remaining terms of the settlement agreement. During the hearing, the trial court judge asserted that by dismissing the case "pursuant to the settlement agreement" he had approved the settlement agreement. He also expressed concern that the purposes of the settlement agreement were being frustrated and that the original litigation was not contrived to circumvent TOPA rights. Ms. Juul filed a timely appeal.

## II.

Despite Ms. Juul's assertion that the trial court exceeded its authority when it granted Ms. Rawlings's motion to enforce, it is well settled in the District, and

everywhere else, for that matter, that once a court has reopened a case, it has the power to enforce settlement agreements that are pending before it. *Confederate Mem'l Ass'n v. United Daughters of the Confederacy*, 629 A.2d 37, 39 (D.C. 1993) (citations omitted). However, "a settlement agreement should be enforced according to its terms and not be modified in favor of either party, absent some compelling reasons." *Fields v. McPherson*, 756 A.2d 420, 426 (D.C. 2000) (citing *Camalier & Buckley*, 667 A.2d 822, 825 (D.C. 1995)). Ms. Juul contends that the settlement agreement was not "court-approved" and therefore, the trial court erred when it exempted the instant sale of property from TOPA's requirements.[2] In order to determine whether the trial court erred by finding that the transfer was made pursuant to a "court-approved settlement agreement," and that TOPA, therefore, did not apply, we must first determine whether this transaction qualifies as a sale under TOPA.[3]

---

[2] Ms. Juul also contends that declaratory relief can only be granted for justiciable claims and that Ms. Rawlings presented no justiciable claim to the court concerning allegations of fraud in the inducement of the settlement agreement. However, this contention is belied by the record. Despite appellant's claims, Ms. Rawlings argued allegations of fraud during the status hearing after the reopening of the case, and those allegations were sufficient to create a justiciable issue. Appellant offers no basis for us to conclude otherwise.

[3] Appellant also contends that the trial court erred by finding that the transfer between the parties to Ms. Rawlings' mother did not constitute a "sale" under TOPA because it was pursuant to an inter-vivos transfer. *See* D.C. Code § 42-3404.02 (c)(2)(B) (2016). However, the trial court did not conclude that TOPA did

(continued…)

TOPA requires that before an owner of a property may "sell" the property or transfer the property through a "sale," the owner must provide any tenants of the property an opportunity to purchase the property at a price and terms that represent a bona fide offer of sale. D.C. Code § 42-3404.02 (a) (2016). The TOPA statute explicitly defines the words "sale" and "sell," *id.* at 42-3404.02 (c)(1), and also makes clear what does *not* constitute a sale under the statute. *Id.* at 42-3404.02 (c)(2). If there is no "sale" as defined by the statute, the owner is not required to provide any tenants with an opportunity to purchase the property.

Under TOPA, a transfer pursuant to court order or a court-approved settlement is not a sale. *Id.* at 42-3404.02 (c)(2)(M). However, TOPA does not define what constitutes a "court-approved settlement" and we also have not had the opportunity to define the term in this or any other relevant context. We note that

(…continued)
not apply to this transaction because it was an inter-vivos transfer. The trial court based its decision that the transfer was not a "sale" on its finding that the settlement agreement was a "court-approved settlement agreement." Because we review for trial court error, *see Sullivan v. United States*, 721 A.2d 936, 937 (D.C. 1998), and the record does not support appellant's contention that the trial court's decision was based on a finding that this property exchange was exempt from TOPA requirements because it was an inter-vivos transfer, this issue is not properly before us.

the Council, in enacting TOPA, viewed court orders and court-approved settlements as being on equal footing when it came to excluding property transfers from TOPA's reach. Therefore, because TOPA was passed to protect tenants' rights, a "court-approved" settlement, like a court order, should have the imprimatur, or in other words, the formal endorsement of the court behind it. To conclude otherwise would open the door to the possibility of disingenuous lawsuits filed by individuals hoping to evade their TOPA obligations by subsequently agreeing to settle their disputes and then asking courts to dismiss the pending lawsuit. As we have repeatedly acknowledged, "the Council . . . enacted TOPA to discourage the displacement of tenants through the sale of rental properties and to provide tenants opportunities for home ownership, without interfering with a landlord's property rights." *Richman Towers Tenants' Ass'n v. Richman Towers LLC*, 17 A.3d 590 (D.C. 2011) (quoting *Malik Corp. v. Tenacity Group, LLC*, 961 A.2d 1057, 1062 (D.C. 2008)). However, TOPA's exemption for "court-approved settlement[s]" illustrates the equally important policy of not unreasonably interfering with an owner's property right when that right is the subject of a binding settlement agreement, which our judicial system encourages, entered into during the course of litigation. *See Gabriellan v. Gabriellan*, 473 A.2d 847, 850 (D.C. 1984) ("Public policy encourages the drafting of settlement agreements; if valid, they are binding on the parties.") (citations omitted). Therefore court-

approval is the limiting principle, and thus we must determine what such approval requires, as it is not defined by the statute.

Whether the settlement agreement is "court-approved" is a mixed question of law and fact "that calls for a mixed standard of review." *See generally Fed. Mktg. Co. v. Virginia Impression Prods. Co.*, 823 A.2d 513, 526 (D.C. 2003) (citation omitted). We review questions of law *de novo*. *See Davis v. United States*, 564 A.2d 31, 55 (D.C. 1989) (en banc). However, the trial court's factual determinations will be accepted unless clearly erroneous. *Fed. Mktg. Co.*, 823 A.2d at 526. Despite the trial court's finding that the settlement agreement was "court-approved" when the trial court dismissed the case "pursuant to the settlement agreement," Ms. Juul argues that the trial court could not have approved the agreement because the court did not have sufficient facts before it to make an informed judgment about whether or not to approve the agreement. Ms. Juul points out that the trial court never read over the terms of the agreement and neither inquired about the scope of the agreement nor questioned the parties about the circumstances that led to the agreement before granting the motion to dismiss the case with prejudice pursuant to that agreement. In essence, Ms. Juul argues that the trial court's finding that the settlement was court-approved is erroneous because the case is not supported by substantial evidence in the record. Despite the

trial court's finding that the settlement was court-approved because it had been dismissed "pursuant to the settlement agreement," we are not convinced on this record that the trial court had sufficient knowledge of, and familiarity with, the terms and conditions of the settlement agreement to make the kind of informed judgment that is understood to typically underlie court orders. *See Weil v. Markowitz*, 829 F.2d 166, 171-72 (D.C. Cir. 1987) (trial court's approval of settlement may be reversed if shown that the trial court did not have sufficient facts before it to make an informed judgment).

While this issue is one of first impression in our court, a fair reading of our case law is that settlement agreements are not court-approved unless the trial court takes some steps to become familiar with, and to understand, the terms of the settlement agreement before approving it. For example, in *Shepherd Park Citizens Ass'n v. Gen. Cinema Beverages*, 584 A.2d 20, 23 (D.C. 1990), we upheld a trial court's approval of a settlement agreement after it considered the extent of investigation, proof problems, strength of defenses, costs of litigation, good faith, possible collusion, the experience of counsel, and the extent of opposition to the settlement. Likewise, in *Boyle v. Giral*, 820 A.2d 561 (D.C. 2003), we upheld a trial court's approval of a class action settlement agreement after the trial court held a hearing on the fairness of the agreement. Thereafter, in *Tsintolas Realty Co.*

*v. Mendez*, 984 A.2d 181 (D.C. 2009), we reviewed whether there was a material breach in a settlement agreement that was approved by the trial court without objection after it read the settlement agreement out loud in open court.

In each of the aforementioned cases, this court noted that the trial court either read or inquired about the terms of the settlement agreement before giving it "court approval." We note that none of the cases mentioned above explicitly address what is required for a settlement to qualify as "court-approved," but it goes without saying that in order for a trial court to approve a "settlement agreement," the trial court, at a minimum, must be aware of the terms of the settlement agreement.

Here, the record prior to reopening the case does not support the trial court's subsequent finding that its original dismissal of the case was based on its approval of the parties' settlement agreement because it does not appear from the record that the trial court took any steps to become familiar with the terms of the settlement agreement prior to granting the parties' request to dismiss the case with prejudice. Instead, it appears that the trial court dismissed the case without even a cursory review of the agreement or any discussion with the parties about the facts and circumstances that led them to court or to reach the agreement. We hold that to

qualify as a court-approved settlement, there must be some record support that the trial court had an understanding of the terms of the agreement and subsequently ratified those terms when it approved the settlement agreement. Here, because there is no record evidence that the trial court ever read or otherwise became knowledgeable about the terms of the settlement agreement before dismissing the case between Ms. Rawlings and Mr. Juul, the settlement agreement in this case was not "court-approved" at the time of the dismissal, and thus the trial court's finding of such was erroneous.

## III.

While the settlement agreement in this case was not "court-approved" at the time of the dismissal, this alone does not resolve the matter before us because the trial court, after reopening the case and having all of the facts before it, subsequently enforced the settlement agreement and entered an order directing the transfer of property to Ms. Rawlings' mother.

To successfully challenge the trial court's subsequent enforcement of the settlement agreement, Ms. Juul "must show that the trial court abused its discretion: this generally requires a showing either that the agreement in question

was so manifestly unfair as to preclude judicial approval, or that the court did not have sufficient facts before it to make an informed judgment." *Weil*, 829 F.2d at 172 (internal citations omitted). None of Ms. Juul's arguments on appeal allege that the settlement agreement was so manifestly unfair as to preclude judicial approval. Thus the only question remaining is whether the trial court had sufficient facts before it to make an informed judgment about whether to approve the settlement agreement.

On March 12, 2014, on review of Ms. Rawlings' motion to enforce and after hearing arguments concerning the settlement agreement and inquiring as to how the tenants came to assign their rights to appellant, the trial court issued an order enforcing the original settlement agreement. The record amply demonstrates that at the time it entered the enforcement order, the trial court was aware of, and familiar with, the terms and conditions of the settlement agreement. In addition, the trial court heard argument on the issue of enforcement and possible frustration of the agreement by Mr. Juul before granting Ms. Rawlings' Motion to Enforce. Under TOPA, a "sale" does not include "a transfer pursuant to court order," D.C. Code § 42-3404.02 (c)(2)(M) (2012 Repl.), and therefore, once the trial court ordered Mr. Juul to "cooperate with the sale of the property to plaintiff's [Ms. Rawlings'] mother pursuant to the October 31, 2013, Settlement Agreement" and

ordered the parties to "comply with the remaining terms of the October 31, 2013 Settlement Agreement," the trial court cured its original error of not making sufficient inquiry before approving the settlement at the time of the dismissal. *See Brady v. Fireman's Fund Ins. Cos.*, 484 A.2d 566, 568-69 (D.C. 1984) (trial court erred by not providing notice to attorney of potential liability for not complying with discovery, but then cured its error when attorney filed, and court considered, a Rule 60 (b) motion).

Similarly, in this case, the trial court's erroneous belief that it had approved the settlement agreement at the time of the dismissal was cured by its subsequent review, approval, and enforcement of the terms and conditions of the settlement agreement with full knowledge of the circumstances surrounding the dispute between Ms. Rawlings and Mr. Juul.

Ms. Juul argues that Ms. Rawlings' motion to enforce was a request to have the tenants "stripped of their rights" and that the trial court could not subsequently issue an order that deprived Ms. Juul of the tenants' assigned TOPA rights. However, the TOPA statute does not specify when a trial court order must be rendered in connection with a transfer of property to be exempt from the definition

of a "sale" and thus does not preclude our holding today.[4] When a trial court reassumes jurisdiction it may decide whether to enforce a settlement agreement through a court order.[5] Our holding today is consistent with similar situations where a trial court erroneously renders an order and then subsequently cures its own error in a new order. *See Berry v. Berry*, 277 P.3d 771, 776 (Alaska 2012) (trial court's error in granting temporary orders before considering a party's argument was cured by reconsideration of that order in light of those arguments). Upon review of the settlement agreement and after argument concerning the implications of TOPA on the agreement, the trial court in this case decided to enforce the agreement. Ms. Juul does not point to any changed circumstances that occurred involving the tenants between the date of the trial court's original order

---

[4] Moreover, it is apparent from the record that the tenants' TOPA rights had not vested at the time the tenants "transferred" those rights to Ms. Juul. TOPA "rights" only vest upon the execution of an agreement that meets the statutory definition of a "sell" or "sale." However, there are many exceptions to the general rule enumerated in the statute, of which a court-approved settlement is one. *See* D.C. Code § 42-3404.02 (b), (c)(1), (c)(2)(A) to (c)(2)(N) (2013 Repl.). But for a technical defect in the process used by the court to approve the settlement agreement, a defect that was subsequently cured, appellant never enjoyed TOPA rights to the property because the tenants were never entitled to a right of first refusal.

[5] Ms. Juul also argues that there was nothing for the trial court to enforce because her son complied with the terms of the agreement up until that point. However, given the trial court's findings on possible fraud, it was well within its jurisdiction to decide whether to enforce the agreement and order Mr. Juul to comply with the remaining terms of the agreement.

dismissing the lawsuit pursuant to the settlement agreement and the trial court's subsequent order to enforce compliance with the settlement agreement that put the tenants in a materially different position with respect to the enforcement of their TOPA rights. As the Act makes clear, a tenant's potential right of first refusal is not so absolute that it may interfere with the judicial process and the court's authority to enforce contracts, including settlement agreements. When the trial court acts to ensure that a party does not intentionally frustrate the purpose of a settlement agreement procured through litigation, such action is not erroneous under TOPA.

## IV.

In summary, we hold that while the trial court erroneously found that the settlement agreement was a "court-approved settlement agreement" at the time of the dismissal of the case, the trial court subsequently cured its error when it became familiar with the terms of the agreement and subsequently ratified it by ordering that the agreement be enforced. Therefore, we affirm the trial court's judgment.

*So ordered.*